[Crim. No. 11017. Fourth Dist., Div. One. Mar. 26, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
BENNY CLAUDE WOOLSEY, Defendant and Appellant.

COUNSEL

Michaels & Cohen, E. Philip Michaels and Mark S. Borden for Defendant and Appellant.

Evelle J. Younger and George Deukmejian, Attorneys General and Jack R. Winkler, Robert H. Philibosian, Chief Assistant Attorneys General, Daniel J. Kremer, Assistant Attorney General, Harley D. Mayfield and Beatrice W. Kemp, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WIENER, J.**—The defendant appeals from the judgment entered upon his plea of guilty to a misdemeanor violation of receiving stolen property (Pen. Code, § 496, subd. 1). The plea of guilty was entered after his motion to suppress evidence under Penal Code section 1538.5 was denied.[1]

---

[1]Defendant's motion to set aside the information (Pen. Code, § 995) and his petition for writ of prohibition (Pen. Code, § 999a) were also denied (*Woolsey* v. *Superior Court*, 4 Civ. 18232). The defendant's appeal (Pen. Code, § 1538.5, subd. (m)) is not affected by the fact that his plea was entered pursuant to a plea bargain. (*People* v. *Hill* (1974) 12 Cal.3d 731, 739, fn. 2 [117 Cal.Rptr. 393, 528 P.2d 1].)

Defendant contends Vehicle Code section 2805 is unconstitutional[2] and thus his consent given in response to a California highway patrolman's alleged authority under that section was coerced, rendering the search invalid. Consequently, the trial court committed prejudicial error in refusing to suppress the various items of evidence seized as the result of the unlawful search. For the reasons which we will discuss, we conclude the search was lawful and affirm the judgment.

*Facts*

In the early morning hours of August 6, 1977, Frank Roberts saw two men drive away in a reddish-orange 1967 pickup truck after they left a 1972 Chevy pickup truck on the street near his home. The abandoned vehicle was identified as having been stolen from Pete Ellis Ford; the windows, camper shell, engine and component parts had been removed, leaving only the vehicle's cab.

On September 1, 1977, while driving a 1967 reddish-orange pickup truck, the defendant and his son, Justin Woolsey, were stopped by San Diego police officers because the truck had a defective brake light and no license plate. The detaining officers had been previously informed the defendant might be involved in an auto theft ring and, in fact, they were driving to his place of business to investigate further when the vehicle was stopped. After it was determined the defendant had no valid identification of ownership for the vehicle, he was asked to accompany the officers to the police garage to allow the vehicle to be checked for ownership. During the approximately one-half hour period the truck was being checked, California Highway Patrol Officer Myron Smith called the police department, auto theft division. He was informed of the detention of defendant's vehicle and was asked to assist in checking out the truck. At the police garage, Officer Smith identified himself and informed defendant that as part of his job as an officer with the Highway Patrol, he inspected businesses that sold new and used auto parts under section 2805. Defendant said he was involved in such a business and he did not

---

[2]All references are to the Vehicle Code unless otherwise indicated.

Section 2805, in force at the time, provided: "A member of the California Highway Patrol may inspect any vehicle of a type required to be registered under this code on a highway or in any public garage, repair shop, parking lot, used car lot, automobile dismantler's lot, or other similar establishment, for the purpose of locating stolen vehicles, investigating the title and registration of vehicles, or inspection of vehicles wrecked or dismantled."

The section was amended in 1977 to restrict inspections whenever possible to a time and in a manner so as to minimize any interference with or delay of business operations. (See also § 320, limiting inspections to business hours.)

have a license. Officer Smith advised the defendant that he would provide him with the necessary licensing forms, and would like the opportunity to inspect defendant's business. He explained that when an individual did not permit an inspection under section 2805, he was subject to arrest and, on previous occasions, the officer had arrested individuals for not complying with the particular section. Defendant commented that an inspection of his business could occur at any time and acknowledged in response to Officer Smith's question that the present time was convenient. Officer Smith, accompanied by two San Diego police officers, then followed the defendant to his place of business. The property, located in a residential area, contained many vehicles fully dismantled in the front yard area and sections of vehicles, doors, trunk lids, motorcycles and parts, scattered all over. The defendant escorted the officers around the property, during which Officer Smith spotted numerous parts which appeared to have been removed from the stolen 1972 Chevy pickup truck. After making the observations, Officer Smith, who had also been investigating the theft of the 1972 truck, arrested defendant and his son for possession of stolen property. The suspects were advised of their *Miranda* rights and taken into custody.

### Standards Governing Appellate Review

The location and seizure of the evidence against the defendant were accomplished without a search warrant. ■ The burden of justifying a warrantless search rests upon the prosecution. (*People* v. *Dickerson* (1969) 273 Cal.App.2d 645, 650 [78 Cal.Rptr. 400].) Only if the evidence seized without a warrant falls within a recognized exception to the warrant requirement may the People prevail on an attack seeking to suppress the evidence. (*People* v. *Rios* (1976) 16 Cal.3d 351, 355 [128 Cal.Rptr. 5, 546 P.2d 293].) The People rely upon defendant's consent to the search.

The trial court found the defendants had freely consented to drive their vehicle to the police garage and had voluntarily granted Officer Smith's request for permission to walk around the yard to inspect the premises. In addition, the court held section 2805 to be constitutional.

We approach our review with the following principles in mind. ■ In every case, the voluntariness of consent is "a question of fact to be determined in light of all the circumstances." (*People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852].) "A proceeding under section 1538.5 to suppress evidence is a full hearing on the issues . . . . [Citations.] The power to judge credibility of witnesses, resolve conflicts

in testimony, weigh evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor proper exercise of that power, and the trial court's findings—whether express or implied—must be upheld if supported by substantial evidence." (*People* v. *Superior Court (Keithley)* (1975) 13 Cal.3d 406, 410 [118 Cal.Rptr. 617, 530 P.2d 585].)

### The Defendant's Contentions

To support his argument that his consent was coerced, defendant points out he consented to the inspection when he was being detained at a · police garage while under strong suspicion of being a participant in an auto theft, questioned by police officers without being advised of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436, 439 [16 L.Ed.2d 694, 704, 86 S.Ct. 1602, 1603, 10 A.L.R.3d 974], and threatened with arrest under Penal Code section 148 unless he permitted the inspection authorized by section 2805.

### I. The Presence of the Defendant at the Police Garage and His Failure to Receive Miranda Rights Did Not Render His Consent Involuntary

■ Consent induced by an illegal arrest compels a conclusion of involuntariness (*People* v. *Leib* (1976) 16 Cal.3d 869, 877 [129 Cal.Rptr. 433, 548 P.2d 1105]); absent such illegality, custody of the defendant may be of significance, but it is not determinative. (See *Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641].) ■ Defendant does not question his initial stop for a traffic violation and his willingness to accompany the police to the police garage. While at the garage for approximately 30 to 45 minutes, he had coffee with his son outside the presence of the police officers who were checking the ownership of the vehicle. His conversation with the police was limited to discussion of the registration and ownership of the vehicle; there was no interrogation relating to a stolen car or stolen auto parts. After the vehicle was checked, the defendant was advised the police were through with his truck and he and his son were free to go. Under these circumstances, we cannot conclude the environment in which the conversation occurred was inherently coercive. (See *People* v. *Herdan* (1974) 42 Cal.App.3d 300, 307 [116 Cal.Rptr. 641].) There is no suggestion that the check of the vehicle was prolonged to create additional pressure on the defendant to obtain his agreement to permit an inspection of his place of business.

Defendant urges that his failure to receive a *Miranda* warning not only affected his attitude in communicating with the police officers, but was required to obtain his valid consent. Our Supreme Court has held otherwise. ■ Advice as to *Miranda* rights is not a prerequisite to a voluntary consent to search. (*People* v. *James* (1977) 19 Cal.3d 99, 114-115 [137 Cal.Rptr. 447, 561 P.2d 1135].)

" 'A consent to search, as such, is neither testimonial, nor communicative in the Fifth Amendment sense. If appearing in a lineup·and speaking words used by a robber is not a "disclosure of any knowledge [the accused] might have" [citation], neither is a consent to search. The fact that the search leads to incriminating evidence does not make the consent testimonial, any more than the victim's identification at the lineup gives such a quality to the words spoken by the suspect.' " (*People* v. *Ruster* (1976) 16 Cal.3d 690, 700 [129 Cal.Rptr. 153, 548 P.2d 853, 80 A.L.R.3d 1269]; quoting from *People* v. *Thomas* (1970) 12 Cal.App.3d 1102, 1110 [91 Cal.Rptr. 867].) "The request for a consent to search is designed to elicit physical and not testimonial evidence." (*People* v. *Strawder* (1973) 34 Cal.App.3d 370, 379 [108 Cal.Rptr. 901].)

*II. Vehicle Code Section 2805 Is Constitutional*

Defendant argues that section 2805 is unconstitutional because it authorizes an inspection of his premises without a search warrant or its equivalent.[3]

The protection of the Fourth Amendment generally extends to commercial purposes. (*People* v. *Ramsey* (1969) 272 Cal.App.2d 302 [77 Cal.Rptr. 249]; *G. M. Leasing Corp.* v. *United States* (1977) 429 U.S. 338 [50 L.Ed.2d 530, 97 S.Ct. 619, 629].) "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property."

---

[3]Defendant also attacks the constitutionality of the statute on the grounds that (1) it subjects him to criminal penalties under a standard so indefinite that the police may rely on nothing more than their own preferences and (2) it contains no standards to determine which "similar establishments" fall within the purview of the statute. This contention is without merit. Section 2800 makes it unlawful to wilfully refuse to submit to any lawful inspection. The language of the statute (§§ 2800, 2805) is sufficiently explicit to inform those who are subject to it what conduct will render them liable for its penalties. (*Solander* v. *Municipal Court* (1975) 45 Cal.App.3d 664, 667 [119 Cal.Rptr. 609].) Section 2805 satisfies the due process requirements of certainty. Defendant's argument as to vagueness is based on his premise that reasonable or probable cause to inspect (search) must be determined on an objective basis by a police officer. We deal with this argument in the body of our opinion.

(*See* v. *City of Seattle* (1967) 387 U.S. 541, 543 [18 L.Ed.2d 943, 946, 87 S.Ct. 1737, 1739].) The United States Supreme Court has "unequivocally rejected any narrowing of the scope of the Fourth Amendment to 'the typical policeman's search for the fruits and instrumentalities of crime. . . . It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior.' [Citation.]" ▪ Instead the courts suggested a broader basis of the scope of the Fourth Amendment: " 'The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of [the individual] against arbitrary invasions by governmental officials . . . . [E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant.' " (*Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 669, 705 [94 Cal.Rptr. 412, 484 P.2d 84].)

The exceptions referred to are for "pervasively regulated businesses" (*United States* v. *Biswell,* 406 U.S. 311, 316 [32 L.Ed.2d 87, 92, 92 S.Ct. 1593, 1596]) and for "closely regulated" industries, "long subject to close supervision and inspection." (*Colonnade Catering Corp.* v. *United States,* 397 U.S. 72, 74, 77 [25 L.Ed.2d 60, 63-65, 90 S.Ct. 774, 777].) Where the commercial activity, such as the liquor industry (*Colonnade*) or firearms (*Biswell*) has a history of governmental involvement the businessman relinquishes his reasonable expectation of privacy. (*Marshall* v. *Barlow's, Inc.* 436 U.S. 307 [56 L.Ed.2d 305, 98 S.Ct. 1816, 1821].)

Section 2805 as first enacted in Vehicle Code section 135 (Stats. 1935, ch. 589) expressly provided that members of the California Highway Patrol had the power to inspect any vehicle of a type required to be registered *for the purpose of locating stolen vehicles.* The purpose of the statute, to eliminate trafficking in stolen cars and the illegal interchange of stolen auto parts, has been stated expressly in every amendment to the statute over the last 45 years.

At the local level, the Municipal Code of San Diego includes provisions consistent with state law in order to control those businesses which have the opportunity of engaging in the sale of stolen auto parts. The regulation by the City of San Diego over a business engaged in the sale of used auto parts includes licensing (San Diego Mun. Code, § 31.0110, subd. (b), entitled "Auto Wrecker") and the maintenance of a record of the purchase, sale or exchange of each motor vehicle purchased, sold, dismantled or exchanged, which must contain the name and address

of the person from whom purchased or received, the make, state license number, motor number, serial number, and style of any used motor vehicle. (§ 33.0902.) The municipal code also makes it unlawful for any person to engage in the business of an automobile wrecker which includes one selling used motor parts, unless the business is conducted in compliance with the regulations dealing with the description and maintenance of the premises (§ 33.0903.1). The premises are required to be arranged for reasonable inspection or access to all parts by proper fire, health, police and building authorities. Before the license is issued, the premises must be inspected with a report to the chief of police to assure compliance with the law.

Under state law, an auto dismantler is one who sells or deals in used motor vehicle parts (§ 220). Legislation labeled as Special Anti Theft Laws of the Vehicle Code, permits representatives from the Department of Motor Vehicles to inspect any vehicle of a type required to be registered in any auto dismantler's lot for the purpose of investigating the title and registration of the vehicle (§ 10656). Section 320 requires that records of certain auto dismantlers be maintained and open to inspection by a peace officer during business hours. Quite obviously, regulation by city and state government over automobile dismantlers is part of the continued effort by law enforcement to eliminate theft of cars and the profit associated with that illegal activity. The elaborate provisions for registration and licensing of businesses engaged in dismantling vehicles or selling used vehicles was "designed to segregate the honest business man from the thief and the fence . . . . [A] state may impose on the licensing of a business, so fraught with public danger, a requirement that its premises be open to orderly inspections." (*People* v. *Grey* (1972) 23 Cal.App.3d 456, 461 [100 Cal.Rptr. 245].)

The discussion between the officer and the defendant occurred during the regular business hours of the business day. He was accurate in his description of section 2805 and that a violation of the section would subject a person to arrest. The officer did not threaten the defendant with a forcible entry of his premises to permit the inspection. When the officers accompanied Woolsey and his son to the business premises, there were other persons there. At the location, the officers were invited in by Woolsey. Thereafter, in response to Officer Smith's request to be shown around the premises, the defendant said, "Follow me and I'll show you how we have our yard set up." He accompanied the officers around the property and fully described the operation of his business.

■ A defendant's consent given in response to a correct statement of the law is not coerced. The officer was not required to elaborate further on the options available to the defendant or to detail the procedure which might follow his refusal. It was not necessary to advise the defendant that his business premises could not be forcibly entered because this was implicit in the explanation furnished to him by the officer. A police warning is not required as a prior condition for a valid consent to search. *(People* v. *Duren* (1973) 9 Cal.3d 218, 241 [107 Cal.Rptr. 157, 507 P.2d 1365]; see also *Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 227-234 [36 L.Ed.2d 854, 862-867, 93 S.Ct. 2041].) "[W]hen a person of normal intelligence is expressly asked to give his consent to a search of his premises, he will reasonably infer he had the option of withholding that consent if he chooses." *(People* v. *James, supra,* 19 Cal.3d 99, 116.) Woolsey's election to consent rather than face the sanctions of the statute does not render his consent involuntary.

*Disposition*

Judgment affirmed.

Staniforth, Acting P. J., and Ehrenfreund, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 24, 1979.

---

*Assigned by the Chairperson of the Judicial Council.