THE STATE OF OHIO, APPELLEE, *v.* ZINMEISTER, APPELLANT.

(No. 49478 — Decided October 7, 1985.)

*John T. Corrigan,* prosecuting attorney, for appellee.

*Timothy J. Potts,* for appellant.

PRYATEL, J. On August 2, 1984, Kenneth Zinmeister, defendant-appellant, was indicted on twelve counts of receiving stolen property (in violation of R.C. 2913.51); three counts of possession of criminal tools (in violation of R.C. 2923.24); one count of tampering with a public utility (in violation of R.C. 4933.18); one count of theft of utility service (in violation of R.C. 4933.19); and one count of possession of a motor vehicle with concealed identity (in violation of R.C. 4549.07).

Defendant filed a motion to suppress all physical evidence seized by the police. Following the presentation of evidence the court denied defendant's motion to suppress. The court then accepted defendant's plea of no contest (which defendant entered after retracting a not guilty plea) and sentenced defendant to an aggregate definite sentence of six years.

The evidence adduced at the hearing on defendant's motion to suppress was as follows: On June 12, 1984, at approximately 1:15 p.m., three members of the Cleveland Police Department arrived at defendant's place of business (Z's Towing and Salvage) located at 10401 Detroit Avenue, for the purpose of conducting an inspection of the premises pursuant to Cleveland Codified Ordinances Section 601.15[1] (which allows for warrantless inspections of such establishments as public garages, auto sales

---

[1] The ordinance in effect at the time the inspection occurred has been amended without substantive changes.

lots, motor vehicle salvage facilities, junk yards, etc.).

The officers testified that they had tried to inspect Z's Towing and Salvage on June 11, 1984, but the lot appeared to be closed. On June 12, 1984, an officer phoned the establishment and was told that Z's Towing and Salvage was open for business. Upon police arrival, the gate to Z's Towing and Salvage was unlocked. Two men were on the premises (one was seen looking for hubcaps). The officers approached the other man, Wayne Nagy, who told them that the owner (defendant) was out of town. Nagy indicated that he (Nagy) was in charge of the business. The officers told Nagy their purpose for being there (*i.e.*, to inspect the premises) and showed Nagy a copy of Cleveland Codified Ordinances Section 601.15, before Nagy gave the police permission to inspect the premises.

The police officers discovered that the vehicle identification numbers ("VIN") on several vehicles or the motor numbers were altered.[2] After being contacted by phone, defendant denied that these vehicles belonged to him. Nagy produced a list of all the titles in the salvage yard's possession. No titles were included for the vehicles suspected of being stolen. The three officers, who were later joined by approximately three other policemen, had these vehicles towed as well as engines and other motor vehicle parts that also appeared to be stolen.[3] According to the officers, the towing of vehicles and parts that appear to be stolen was standard procedure followed in the eight to ten prior inspections conducted pursuant to the Cleveland ordinance.

An interdepartmental memorandum issued on May 21, 1984 by the chief of police to the officers and members of the police department advised that it was improper to search for stolen vehicle *parts* without a warrant. According to the memorandum:

"All inspections shall be for the sole purpose of locating stolen motor vehicles and, therefore, only motor vehicles will be inspected. If probable cause is developed to warrant a search of the permises for contraband, stolen vehicle parts, or personal property, the inspecting officer shall obtain a proper search warrant before conducting such a search."

Two of the three officers directly involved in the inspection testified that they became aware of the interdepartmental memorandum through a phone conversation on June 12, 1984 — *after* the vehicles were towed. Although one of the officers admitted that he was informed that only vehicles (and not parts) were to be towed, he said that a truckload of parts was towed after this conversation. However, the sergeant (in charge of the operation) testified that he was merely told that "there may be some problem with towing the *vehicles*" (but not vehicle parts). The sergeant received this information over the phone. Nor did he discuss the matter with his fellow officers. The third officer had no knowledge of the interdepartmental memorandum on June 12, 1984 and believed he was entitled to inspect vehicle parts.

Search warrants were obtained and executed on June 13, 1984 and June 15, 1984. As a result of these searches, addi-

---

[2] Officer William Rieger, assigned to the First District Strike Force, Auto Theft Division, testified that in some of the vehicles, the VIN numbers were either offset (contrary to the factory's insertion) or were improperly attached (*e.g.,* the numbers came off when pulled). As to the motor numbers, Rieger stated that they were "prick-punched," distorted, or restamped.

[3] For instance, the engine numbers and transmission numbers were ground off or "prick-punched."

tional stolen motor vehicles and parts were recovered.

William Nagy and Pedro Carabello testified on behalf of defendant. Nagy admitted telling the police officers that defendant placed him in charge of the salvage yard while he (defendant) was away and that the sergeant introduced himself at the gate (which Nagy said was locked) and told him he was there to make an inspection under the city ordinance. Nagy further admitted that he phoned defendant two times and learned that defendant did not have a permit to run the salvage yard.

Nagy said that he observed the officers inspect the vehicles in the yard and a locked trailer parked outside the inner gate. According to Nagy, a flatbed truck used to tow various vehicle parts arrived between 4:00 and 4:45. Other tow trucks arrived at 6:30 or 7:00 and between 11:00 and 11:30 p.m.

Nagy testified that he returned to the salvage yard around 4:00 p.m. the next day and saw "at least 15 to 20 people going through everything inside the yard." He also observed the officers at the scene on June 15, 1984.

Pedro Carabello, who was present at the salvage yard on June 12, 1984, said he arrived at the yard with Nagy (a friend of his) at around 9:30 a.m. with the intention of fixing a transmission line on one of the vehicles. Although Carabello denied that he was a cus-tomer, he did admit that he was looking for hubcaps for his car.

The trial court denied defendant's motion to suppress all physical evidence seized by the police. The court concluded that Cleveland Codified Ordinances Section 601.15 was constitutional since the vehicular handling industry is pervasively regulated. The court further found that the ordinance was sufficiently limited as to time, place and scope and that warrantless inspections were necessary to the regulation scheme. Finally, the court concluded that the police officers who conducted the inspection acted in good faith in seizing automobiles and vehicle parts found in plain view and did not exceed the scope of the ordinance.

Defendant filed the instant appeal, assigning three errors.

Assignment of Error No. I

"The lower court erred in overruling appellant's motion to suppress evidence seized pursuant to Cleveland Codified Ordinance 601.15 as the ordinance is violative of the Fourth Amendment of the United States Constitution and Article I[,] Section 14 of the Ohio Constitution."

Appellant initially contends that Cleveland Codified Ordinances Section 601.15 is unconstitutional on its face. In particular, appellant posits that Section 601.15,[4] in authorizing warrantless inspections of vehicles on commercial

---

[4] Cleveland Codified Ordinances Section 601.15 reads in pertinent part as follows:

"(A) For the purpose of locating stolen motor vehicles, the Chief of Police, or his authorized representative, may inspect any motor vehicle * * * situated in the City of Cleveland in any public garage, community garage, storage garage, service garage, repair shop, parking lot, auto sales lot, vehicle leasing or rental lot, *motor vehicle salvage facility*, scrap metal processing facility, auto wrecking yard, junk yard, or other similar establishment, and may inspect the title, registration, vehicle identification number, or license plates of the vehicle in order to establish the rightful ownership or possession of the vehicle.

"(B) For the purpose of locating a stolen vehicle, the Chief of Police, or his authorized representative, may inspect, implements of husbandry and construction equipment in places described in division (A) of this section.

"(C) Whenever possible, inspections conducted pursuant to division (A) or (B) of this section shall be conducted at a time and in a manner so as to minimize any interference with, or delay of, business operations.

premises, is not reasonably necessary to the furtherance of a legitimate state interest and does not provide minimally adequate procedural safeguards for its implementation.

It is axiomatic that the Fourth Amendment protects against unreasonable searches and seizures, and that subject to specific exceptions (*Camara* v. *Municipal Court* [1967], 387 U.S. 523), the police may not conduct a search unless a neutral magistrate first finds that there is probable cause and issues a warrant. *New York* v. *Belton* (1981), 453 U.S. 454, 457; *Chambers* v. *Maroney* (1970), 399 U.S. 42, 51.

Hence, in general, warrantless administrative searches are unreasonable and therefore invalid. *Marshall* v. *Barlow's, Inc.* (1978), 436 U.S. 307, 312; *See* v. *Seattle* (1967), 387 U.S. 541, 545.[5] Nevertheless, the United States Supreme Court has carved out an exception to the search warrant requirement for "pervasively regulated business[es]," *United States* v. *Biswell* (1972), 406 U.S. 311, 316 (firearms) and industries closely regulated and "long subject to close supervision and inspection." *Colonnade Catering Corp.* v. *United States* (1970), 397 U.S. 72, 77 (liquor).

Although commercial businesses enjoy Fourth Amendment protection against unreasonable searches and seizures (see *Marshall, supra,* and *See, supra*), "[t]he greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home * * *." *Donovan* v. *Dewey* (1981), 452 U.S. 594, 598-599. Therefore, "a warrant may not be constitutionally required when Congress has reasonably determined that warrantless searches are necessary to further a regulatory scheme and the federal regulatory presence is sufficiently comprehensive and defined that the owner of commercial property cannot help but be aware that his property will be subject to periodic inspections undertaken for specific purposes." *Id.* at 600.

Although appellant conceded in open court that the vehicle handling business is a pervasively regulated industry, he contends that the Cleveland ordinance does not fall within the tenets of the *Colonnade-Biswell-Donovan* exception to a warrant requirement, but is more akin to *Marshall* v. *Barlow's, Inc., supra,* which invalidated a warrantless inspection of an electrical and plumbing installation business made pursuant to Section 8(A) of the Occupational Safety and Health Act[6] ("OSHA"). We disagree. The statute in *Marshall* em-

---

"(D) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance of a police officer from inspecting any place described in subsection (A), shall do any act which hampers or impedes a police officer from making an inspection pursuant to this Section.

"Whoever violates this Section is guilty of obstructing vehicle inspections, a misdemeanor of the second degree." (Emphasis added.)

[5] The general rule of law as it applies to inspections of commercial property was enunciated in the *See* decision as follows:

"[A]dministrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure."

[6] Section 8(A):
"In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized —

"(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area,

powered agents of the Secretary of Labor to search the work area of *any* employment facility within OSHA's jurisdiction. The statute neither involved a closely regulated industry nor was limited in time, place and scope. Thus, the agents conducting searches under OSHA were given unbridled discretion while the owners of the businesses were not advised of the scope and objects of the search.

In contrast, the Cleveland ordinance involves a closely regulated industry and is carefully limited in time, place, and scope: The vehicle inspections are restricted to certain businesses (as opposed to *any* business as was the case in *Marshall*); "shall be conducted at a time and in a manner so as to minimize any interference with, or delay of, business operations"; and are limited to inspection of motor vehicles and "the title, registration, vehicle identification number, or license plates of the vehicle."

Moreover, the licensing of motor vehicles (including the titling and transfers of ownership) has historically been subject to close inspection and is governed by R.C. Chapters 4503 and 4505. The businesses listed in Section 601.15 are subject to these general regulations as well as to more specific standards relating to their particular industry. For instance, motor vehicle salvage facilities are licensed and regulated pursuant to R.C. Chapter 4738.

These limitations provide adequate notice to owners of vehicle handling businesses that their vehicles will be subject to inspection and ensure sufficient procedural safeguards against the type of unbridled discretion that was present in *Marshall.* Hence, under these circumstances, the owner of an auto salvage business (a pervasively regulated industry) possesses a diminished expectation of privacy which may be adequately protected by a regulatory scheme which authorizes warrantless inspections. *Donovan, supra,* at 599.

Although appellant urges this court to adopt a New Mexico Court of Appeals decision, which struck down a similar motor vehicle inspection statute as unconstitutional (*State* v. *Galio* [App. 1978], 92 N.M. 266, 587 P. 2d 44, writ of certiorari quashed [Nov. 15, 1978]), we are persuaded by and prefer to follow the majority of jurisdictions which have held such respective statutes constitutional. See *People* v. *Leto* (1984), 124 Misc. 2d 549, 478 N.Y. Supp. 2d 765; *People* v. *Camme* (1982), 112 Misc. 2d 792, 447 N.Y. Supp. 2d 621; *People* v. *Easley* (1979), 90 Cal. App. 3d 440, 153 Cal. Rptr. 396, certiorari denied (1979), 444 U.S. 899; *People* v. *Woolsey* (1979), 90 Cal. App. 3d 994, 153 Cal. Rptr. 746; *People* v. *Grey* (1972), 23 Cal. App. 3d 456, 100 Cal. Rptr. 245; *State* v. *Moore* (Fla. App. 1982), 424 So. 2d 882; *Shirley* v. *Commonwealth* (1977), 218 Va. 49, 235 S.E. 2d 432.

Cleveland Codified Ordinances Section 601.15 was enacted as "an emergency measure providing for the immediate preservation of the public health, safety and welfare * * * " with the express purpose of locating stolen motor vehicles. The trial court correctly determined that warrantless inspections made pursuant to Cleveland Codified Ordinances Section 601.15 are reasonable and in furtherance of a legitimate

---

workplace or environment where work is performed by an employee of an employer; and

"(2) to inspect and investigate during regular working hours and other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employ-

ment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, operator, agent, or employee." Section 657(a), Title 29, U.S. Code.

state interest — *i.e.,* under its duty to protect the health, safety and morals of its citizens to locate stolen motor vehicles and combat the number of auto thefts reaching epidemic proportions in the city of Cleveland. As to the reasonableness of warrantless inspections, the *Biswell* court at 316 explained:

"[I]f inspection is to be effective and serve as a credible deterrent, unannounced, even frequent, inspections are essential. In this context, the prerequisite of a warrant could easily frustrate inspection; and if the necessary flexibility as to time, scope, and frequency is to be preserved, the protections afforded by a warrant would be negligible."

Since motor vehicles are inherently mobile, a warrant could "easily frustrate inspection." The Cleveland ordinance is carefully tailored so that warrantless inspections may be deemed reasonable conduct under the Fourth Amendment.

We hold that Cleveland Codified Ordinances Section 601.15 is constitutional on its face. Appellant's first assignment of error is overruled.

Assignment of Error No. II

"Cleveland Codified Ordinance 601.15 was invalid authority for the search herein as applied to the facts of this case and was violative of the Fourth Amendment to the United States Constitution and Article I[,] Section 14 of the Constitution of the state of Ohio.

"A) The search conducted by the police was not an 'administrative inspection.' "

Appellant next challenges the constitutionality of Cleveland Codified Ordinances Section 601.15 as applied to the facts of this case.

Appellant initally asserts that the inspection of his premises was not a true "administrative inspection" but was instead a search to "gather evidence of a crime." To support his position, appellant relies on the decision of *People* v. *Pace* (1984), 101 App. Div. 2d 336, 475 N.Y. Supp. 2d 443.[7]

In *Pace,* two police officers observed an open truck, driven by Pace, transporting a large portion of a car body. When the officers noticed that the VIN plate was removed from the car body, they placed Pace under arrest. The officers then observed another flatbed truck carrying two front ends of late model cars. Papers revealed that the car ends came from Economy Auto Salvage. The officers went to Economy Auto Salvage and discovered stolen engines. The officers admitted that their "mission was to gather evidence of a crime rather than to administer any regulatory scheme." *Id.* at 341, 475 N.Y. Supp. 2d at 446 (dissenting opinion). Since the search was not for administrative purposes, the court concluded that the fruits of the search (as well as the subsequent search conducted pursuant to a warrant) must be suppressed.

The instant case is distinguishable from *Pace.* Here, the officers testified that the search of appellant's business (which was preceded by a telephone call to determine whether the garage was open) was a routine inspection conducted in the same manner and with the same purpose as the previous eight or ten inspections they conducted pursuant to the Cleveland ordinance. Unlike *Pace,* the officers in this case were not "tipped off" by the suspect transportation of stolen vehicle parts. Hence, the search was undertaken as a routine regulatory inspection rather than a mission to gather evidence of a crime.

---

[7] Appellant also relies on *Rush* v. *Obledo* (N.D. Cal. 1981), 517 F. Supp. 905. It involved the warrantless entry of a family day care home. Unlike this case, the court found that family day care was not a closely regulated industry; hence, a warrant was required.

Since there was no shift "from administrative compliance to a quest for evidence to be used in a criminal prosecution" (*United States* v. *Lawson* [D. Md. 1980], 502 F. Supp. 158, 165), no search warrant was required and the evidence was properly seized.

"B) The search herein was unconstitutional insofar as it exceeded the scope and violated the procedures contained in [Section] 601.15.

"C) The search and seizure cannot be justified on grounds of 'good faith' or 'consent.'"

According to appellant, the police officers exceeded the scope of the ordinance by inspecting and seizing vehicle *parts* rather than limiting their search and seizure to motor vehicles.

The Cleveland ordinance limits what police officers may inspect to "any motor vehicle, * * * title, registration, vehicle identification number, or license plate * * *."

In the instant case, various vehicle parts were seized both pursuant to the warrantless search and under a subsequent search warrant. The officer who examined the vehicles and determined that they were stolen was asked how he came to be looking for transmissions and motors. The officer replied:

"The one truck that was out in front didn't have a motor in and it was missing some other parts.[8] Inside, we were walking through, looking for a motor that would go into a Ford truck. While in there, we were looking at basically all the motors and transmissions that were laying [*sic*] around, and you could observe these numbers from standing, where they were ground off or prick punched, whatever the case may be."

Appellee contends that the seizure of the vehicle parts falls under the "plain view" exception to the warrant requirement. In *State* v. *Williams* (1978), 55 Ohio St. 2d 82 [9 O.O. 3d 81], paragraph one of the syllabus, the Ohio Supreme Court restated the "plain view" doctrine established by the United States Supreme Court in *Coolidge* v. *New Hampshire* (1971), 403 U.S. 443:

"In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities."

In this case, the first and third elements of the "plain view" doctrine were satisfied. As to the second element (that the discovery of the evidence was inadvertent), the Supreme Court of Ohio has rejected an "expansive definition" of inadvertence[9] in favor of the admonition in *Coolidge* that the "'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." *Id.* at 466. Under this rationale, "'[d]iscovery of evidence through such purposeful scrutiny [*e.g.*, searching every vehicle in an auto repair lot] cannot be deemed in-

---

[8] Since appellee conceded in open court that the motor the officer was looking for was not discovered, we are unable to reach the issue whether the seizure of an unattached vehicle part, identified as part and parcel of a stolen vehicle, is admissible.

[9] In *State* v. *Wilmoth* (1982), 1 Ohio St. 3d 118, certiorari denied (1983), 460 U.S. 1081, the court rejected the definition of inadvertence enunciated in *United States* v. *Hare* (C.A. 6, 1979), 589 F. 2d 1291, that "anything that the police might discover while conducting a search would be encountered inadvertently so long as the police did not have knowledge prior to the search of what they would find." *Wilmoth, supra,* at 119-120.

advertent * * * .' " *Wilmoth, supra,* at 119.

The officer in the case at bar admitted that he was looking at "basically all the motors and transmissions that were laying [*sic*] around." The discovery of the parts was not inadvertent but intentional. Consequently, the "plain view" doctrine cannot be used to justify the general seizure of vehicle parts. Vehicle parts seized subject to the warrantless search must be suppressed.[10]

Appellant's second assignment of error is sustained.

Assignment of Error No. III

"The trial court erred in overruling appellant's motion to suppress evidence obtained pursuant to search warrants issued after the warrantless entry of appellant's property."

Appellant contends that the evidence seized in subsequent warrant searches should have been suppressed since (1) the original warrantless entry onto appellant's property was unconstitutional and (2) the warrant was defective on its face.[11]

In the first assignment of error we have already determined that the warrantless entry onto appellant's property was constitutional. Hence, we shall confine our discussion here only to the claim that the warrant was defective on its face.

Appellant claims that the affiant's failure to state *when* he observed stolen trucks, engines, altered or obliterated automobile identification stamping devices and the removal of VIN numbers renders the search warrant invalid.

In *State* v. *Bobby* (Mar. 17, 1983), Cuyahoga App. No. 44549, unreported, the affidavit under challenge *failed* to show that the described material was " '*now* being * * * kept, concealed and possessed' at defendant's home." (Emphasis added.) This court concluded that the search warrant was invalid since there was no temporal relationship between the observations when made and the proposed search.

In the instant case, unlike *Bobby,* the affiant stated that he had:

" * * * good cause to believe that on the premises known as Z's Towing, 10401 Detroit Avenue, south side, including all area surrounded by cyclone fence and all curtilage appertaining

---

[10] Appellant also contends that the officers neither acted in good faith nor had consent to search. The officers believed they were entitled to inspect the vehicle parts and consequently acted in good faith. However, the "good faith exception" applies to officers' reliance on an invalid search *warrant,* not to an invalid search. Moreover, consent was not at issue since appellee admitted that the inspection was not a "consent search."

[11] R.C. 2933.23 provides:

"A warrant for search shall not be issued until there is filed with the judge or magistrate an affidavit particularly describing the house or place to be searched, the person to be seized, the things to be searched for and seized, and alleging substantially the offense in relation thereto, and that the complainant believes and has good cause to believe that such things are there concealed, and he shall state the facts upon which such belief is based. The judge or magistrate may demand other and further evidence before issuing such warrant. If the judge or magistrate is satisfied that grounds for the issuance of a warrant exist or that there is probable cause to believe that they exist, he shall issue a warrant identifying the property and naming or describing the person or place to be searched."

Crim. R. 41(C) states, in pertinent part:

"*Issuance and contents.* A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched."

thereto, there is *now* being unlawfully kept, concealed and possessed:

"Auto title records, records, tools used to strip cars, engine number stamps, VIN tags, stolen vehicles, and car parts, Cleveland Electric Illuminating Company equipment, poles and wires." (Emphasis added.)

Although the affidavit does not state the exact time when affiant observed illegal activity at appellant's business establishment, the affidavit clearly states that "there is *now* being unlawfully kept, concealed and possessed" (emphasis added) stolen vehicles, etc. This language, when read in conjunction with the dates on the affidavit, provides a sufficient temporal relationship between the observations and the proposed search. We conclude that the warrant is not defective. The evidence seized pursuant to the warrant was properly admitted into evidence.

For the foregoing reasons, appellant's third assignment of error is overruled.

Judgment affirmed in part and reversed as to the seizure of the vehicle parts seized pursuant to the warrantless search.

*Judgment affirmed in part and reversed in part.*

MARKUS, P.J., and CORRIGAN, J., concur.