54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 TERM AUTO SALES, INC., et al., Plaintiffs-Appellants,
v.
The CITY OF CLEVELAND, et al., Defendants-Appellees.
 No. 94-3088.
 United States Court of Appeals, Sixth Circuit.
 May 18, 1995.
 
 Before: KEITH, MARTIN, and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Section 601.15 of the codified ordinances of the City of Cleveland provides for the inspection of vehicles and vehicle parts at certain enumerated locations for the purpose of locating stolen motor vehicles or stolen vehicle parts. On July 21, 1986, members of the Cleveland Police Department's auto theft unit, acting pursuant to the aforementioned ordinance, conducted a warrantless search of the premises of Term Auto Sales and Brooklyn Salvage. Both vehicles and parts suspected of being stolen were seized. Term Auto and Brooklyn Salvage were ultimately prosecuted but at the request of the county prosecutor the indictment was dismissed.
 
 
 2
 Subsequent to the dismissal of the indictment, plaintiffs instituted this action pursuant to 42 U.S.C. Sec. 1983, naming the City of Cleveland and a number of police officers as defendants. The individual defendants sought summary judgment, relying upon the defense of qualified immunity, but their motion for summary judgment was denied. In an earlier appeal to this court we ordered the case dismissed as to the defendants sued in their individual capacities based upon the doctrine of qualified immunity. Term Auto Sales, Inc. v. City of Cleveland, No. 92-3909, slip op. (6th Cir. June 28, 1993).
 
 
 3
 The case was then remanded to the district court for further proceedings. At this time the only claims left in the case were the claims against the City of Cleveland and the official capacity claim against the chief of police. Since the official capacity claim against the chief of police is essentially a claim against the City, for all practical purposes the City of Cleveland was the only defendant on remand. Kentucky v. Graham, 473 U.S. 159 (1985); Leach v. Shelby County Sheriff, 891 F.2d 1241 (6th Cir. 1989), cert. denied, 495 U.S. 932 (1990).
 
 
 4
 The only claim involving the City of Cleveland was a facial attack on the constitutionality of Section 601.15. On remand the district judge once again granted summary judgment, holding that the City of Cleveland also benefited from our qualified immunity decision, and, further, that the ordinance under attack was not facially unconstitutional. This timely appeal followed.
 
 
 5
 After reviewing the proceedings that occurred in the district court following remand, we conclude that the district court erroneously applied the doctrine of qualified immunity as to the City of Cleveland; however, we further hold that the district court correctly determined that the ordinance was not facially unconstitutional.
 
 I.
 
 6
 It is well settled that while qualified immunity protects officials, "the doctrine of qualified immunity is no defense to municipal corporations which may otherwise be liable for federal constitutional violations under [42 U.S.C. Sec. 1983]." Marsh v. Arn, 937 F.2d 1056, 1071 (6th Cir. 1991); see also Owen v. City of Independence, 445 U.S. 622, 638 (1980) ("there is no tradition of immunity for municipal corporations .... We hold, therefore, that [a] municipality may not assert the good faith of its officers or agents as a defense to liabilityunder Sec. 1983"); Barber v. City of Salem, 953 F.2d 232, 238 (6th Cir. 1992) ("it is possible that city officials may be entitled to qualified immunity for certain actions while the municipality may nevertheless be held liable for the same actions"). Therefore, the district court's determination that, since we had afforded qualified immunity to the individual defendants on appeal, no liability remained as to the City was erroneous.[1]
 
 II.
 
 7
 The court rejected plaintiffs' allegation that the ordinance was unconstitutional on its face and therefore concluded that no liability flowed from the enforcement of that ordinance.[2] Defendants contend that the district court should be affirmed because it claims that this court determined in its July 28, 1993, opinion that the ordinance is constitutional. See Defendants' br. at 8 ("This Court has already held that the ordinance that is the subject of this action is constitutional.") (Emphasis added.) Defendants' contention is in error.[3] In our earlier opinion, we merely noted that an Ohio state court of appeals had upheld the constitutionality of a prior version of the ordinance. Term Auto Sales, No. 92-3909, slip op. at 6-7 ("[p]rior to the January amendments, [expanding the scope of the ordinance to include automotive parts] Ohio courts had upheld the Cleveland ordinance against constitutional attack. State v. Zinmeister, 27 Ohio App. 3d 313 (1985)"). Our decision on the merits, however, only addressed defendants' interlocutory appeal: whether the district court improperly denied the individual police officers' motion for summary judgment based on the defense of qualified immunity. Therefore we consider the facial validity of the ordinance in this appeal for the first time.
 
 
 8
 The Supreme Court has recognized that the Fourth Amendment's prohibition on unreasonable searches applies to commercial premises as well as to private homes. E.g., New York v. Burger, 482 U.S. 691, 699 (1987). This prohibition exists not only with respect to traditional police searches conducted for the gathering of criminal evidence, but also with respect to administrative inspections designed to enforce regulatory statutes. See Marshall v. Barlow's, Inc., 436 U.S. 307, 312-13 (1978); see also See v. City of Seattle, 387 U.S. 541, 546 (1967) (administrative search of commercial property generally must be supported by a warrant) ("the basic component of a reasonable search under the Fourth Amendment -- that it not be enforced without a suitable warrant procedure -- is applicable ... to business ... premises"). The Court has recognized that as to searches conducted of "closely regulated" industries, Burger, 482 U.S. at 700, a legislative scheme may serve as a substitute for a warrant. See Donovan v. Dewey, 452 U.S. 594, 603 (1981). The Court observed in Marshall: "Certain industries have such a history of government oversight that no reasonable expectation of privacy ... could exist for a proprietor over the stock of such an enterprise." 436 U.S. at 313 (citation omitted). To date the Court has identified four such closely regulated industries: the liquor industry, Colonnade Catering Corp. v. United States, 397 U.S. 72 (1970); the firearms industry, United States v. Biswell, 406 U.S. 311 (1972); the mining industry, Donovan, 452 U.S. at 594; and the vehicle dismantling industry, Burger, 482 U.S. at 691.
 
 
 9
 The Supreme Court in Donovan held that a legislative scheme authorizing warrantless inspection of closely regulated industries will not violate the Fourth Amendment if the following three requirements are met: (1) there is a substantial government interest underlying the regulatory scheme pursuant to which the search is made; (2) the warrantless inspections are necessary to further the regulatory scheme; and (3) the statute's inspection program, in terms of certainty and regularity of its application, provides an adequate substitute for the warrant requirement. See 452 U.S. at 600-03. In this last regard, certainty and regularity are shown when adequate notice is provided and individual discretion by searching officers is curtailed. Burger, 482 U.S. at 703. Consistent with these requirements, the statute or ordinance authorizing the inspection must contain time, place and scope limitations. Id.
 
 
 10
 In this case, plaintiffs concede that they are involved with "closely regulated" businesses and do not question the substantial governmental interest underlying the regulatory scheme. Thus, the first two prongs of the Donovan test are satisfied. As to the third Donovan inquiry, plaintiffs argue that the ordinance is invalid because it arguably applies to more than just "closely regulated" businesses and contains inadequate time, place and scope limitations.
 
 The ordinance at issue reads as follows:
 
 11
 601.15 Inspection of Vehicles for the Purpose of Locating Stolen Motor Vehicles and/or Stolen Parts.
 
 
 12
 (a) For the purpose of locating stolen motor vehicles and/or stolen motor vehicle parts, the Chief of Police or his authorized representative may inspect any motor vehicle, as defined in Section 4501.01 of the Ohio Revised Code and may inspect any motor vehicle part that has been marked with an identifying number by the manufacturer, situated in the City of Cleveland in any public garage, community garage, storage garage, service garage, repair shop, parking lot, auto sales lot, vehicle leasing or rental lot, motor vehicle salvage facility, scrap metal processing facility, auto wrecking yard, junk yard, or other similar establishment, and may inspect the title, registration, vehicle identification number, or license plates of the vehicle in order to establish the rightful ownership or possession of the vehicle or vehicle part.
 
 
 13
 (b) For the purpose of locating a stolen vehicle, the Chief of Police, or his authorized representative, may inspect implements of husbandry and construction equipment in places described in division (a) of this section.
 
 
 14
 (c) Whenever possible, inspections conducted pursuant to division (a) or (b) of this section shall be conducted at a time and in a manner so as to minimize any interference with, or delay of, business operations.
 
 
 15
 (d) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance of a police officer from inspecting any place described in division (a) shall do any act which hampers or impedes a police officer from making an inspection pursuant to this Section.
 
 
 16
 Whoever violates this Section is guilty of obstructing vehicle inspections, a misdemeanor of the second degree.
 
 
 17
 It appears clear that a case can be made that the ordinance encompasses locations other than those under the control of a "closely regulated" business. However, since plaintiffs concede they are "closely regulated" businesses and the ordinance is not being enforced against other than closely regulated businesses,[4] we elect to save for another day what might be the result of an attempt to enforce the ordinance in a different context. We conclude that plaintiffs lack standing to challenge this ordinance on behalf of others not involved in a "closely regulated" business. See, e.g., Basiardanes v. City of Galveston, 682 F.2d 1203, 1210 (5th Cir. 1982) (ordinarily a litigant to whom a statute applies lacks standing to argue that the statute is vague as to others).
 
 
 18
 We turn now to plaintiffs' "time, place and scope" argument.
 
 
 19
 In New York v. Burger, 482 U.S. 691 (1987), the Court considered whether a warrantless search of a vehicle dismantler's business, conducted pursuant to a statute authorizing such a search, fell under the exception to the warrant requirement for administrative inspections of closely regulated industries. The Court, construing the facial validity of a New York statute,[5] found that the statute authorizing inspection of a vehicle dismantler's premises during normal business hours for purposes of reviewing inventory did not violate the Fourth Amendment. The Burger Court found that there was a substantial government interest in regulating the vehicle dismantling industry because "[a]utomobile junkyards and vehicle dismantlers provide the major market for stolen vehicles and vehicle parts." 482 U.S. at 709. Second, it found that the statute's authorizing a warrantless search was necessary to implement the regulatory scheme, allowing frequent, unannounced inspections. Id. at 710. Finally, the Court concluded that the statute provided certainty and regularity sufficient to provide an adequate substitute for a warrant.[6] Id. at 711. In reaching this last conclusion, the Court noted several factors: under the statute the owner of a vehicle dismantling business was informed that inspections would be made on a regular basis; the searching official was allowed no discretion in deciding who to search; and the statute set forth who would conduct the inspection, and placed time, place and scope limitations on the inspections by allowing them to be carried out only during regular and usual business hours. Id. at 711-12.
 
 
 20
 Although the New York statute and the Cleveland ordinance are by no means identical, we conclude they are close enough in their scope, intent and purpose for us to rely on Burger as support for finding that this ordinance is not facially unconstitutional. It is true that the New York statute does provide that any request for documents shall be made "during ... regular and usual business hours"; whereas, the Cleveland ordinance provides that inspections "shall be conducted at a time and in a manner so as to minimize any interference with or delay of business operations." We do not consider this difference in approach to be of constitutional significance. Both ordinances seek to minimize interference with legitimate business operations. One can always construct an argument that the language of either enactment might leave room for abuses. For example, under the New York statute, if the inspecting agent should choose the busiest time of the day to make the inspection, this might be construed as an harassing technique. Although the Cleveland ordinance tries to avoid this problem of business interruption, one could argue the inspectors might come in the middle of the night.[7] We conclude that such arguments are better addressed in a case in which the argument is advanced that the ordinance is being enforced in an unconstitutional manner.
 
 
 21
 Although there is little doubt that the ordinance could be improved upon by narrowing its scope and providing further time, place and scope restrictions, we do not find the ordinance as written to be facially unconstitutional.
 
 
 22
 The decision of the district court upholding the constitutionality of the ordinance is AFFIRMED.
 
 
 
 [1]
 The City concedes this point
 
 
 [2]
 Plaintiffs do not raise a claim that the ordinance as applied was unconstitutional
 
 
 [3]
 Defendants further claim that in the June 28, 1993, opinion we determined that the search itself was constitutional. Defendants' br. at 8 ("[T]his court has held that the search itself, under the authority of this ordinance, was constitutional.") Again, defendants overstate the breadth of our holding in that opinion which was limited to the qualified immunity issue
 
 
 [4]
 In Frisby v. Schultz, 487 U.S. 474 (1988), the Court upheld an arguably overbroad ordinance in the face of a claim of facial invalidity by holding that the ordinance has not and would not be enforced against those not properly within its purview
 
 
 [5]
 The statute provides as follows:
 Records and identification. (a) Any records required by this section shall apply only to vehicles or parts of vehicles for which a certificate of title has been issued by the commissioner [of the Department of Motor Vehicles] or which would be eligible to have such a certificate of title issued. Every person required to be registered pursuant to this section shall maintain a record of all motor vehicles, trailers, and major component parts thereof, coming into his possession together with a record of the disposition of any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any such motor vehicle, trailer or part thereof and shall maintain proof of ownership for any motor vehicle, trailer or major component part thereof while in his possession. Such records shall be maintained in a manner and form prescribed by the commissioner. The commissioner may, by regulation, exempt vehicles or major component parts of vehicles from all or a portion of the record keeping requirements based upon the age of the vehicle ifhe deems that such record keeping requirements would serve no substantial value. Upon request of an agent of the commissioner or of any police officer and during his regular and usual business hours, a vehicle dismantler shall produce such records and permit said agent or police officer to examine them and any vehicles or parts of vehicles which are subject to the record keeping requirements of this section and which are on the premises. ... The failure to produce such records or to permit such inspection on the part of any person required to be registered pursuant to this section as required by this paragraph shall be a class A misdemeanor.
 482 U.S. at 694 n.1 (quoting N. Y. Veh. & Traf. Law Sec.415-a5 (McKinney 1986)).
 
 
 [6]
 The Burger opinion references State v. Zinmeister, 27 Ohio App. 3d 313 (1985), as an example of a regulatory scheme similar to the one under review in Burger that had been upheld in the face of a constitutional attack. See 482 U.S. at 698 & n.11. In Zinmeister the same ordinance under attack here was held to pass constitutional muster
 
 
 [7]
 Indeed, plaintiffs' counsel did make this contention at oral argument. However, the ordinance does not provide for any type of forcible entry and if the inspection occurred when the business was closed, there simply would be nothing to inspect