**CITY OF TOLEDO**

v.

**SETO, INC.**

Toledo Municipal Court, Lucas County, Ohio.

Nos. CRB95–10770–0104, 0204, 0304 and 0404.

Decided June 14, 1996.

*Susan L. Luxon,* Toledo Assistant Prosecutor, for city of Toledo.

*George R. Royer,* for SETO, Inc.

THOMAS J. OSOWIK, Judge.

This case came on for determination by the court on the defendant's motion to suppress.

The record establishes that on December 14, 1994, the Toledo Fire Department responded to a fire alarm at the defendant's place of business. Upon arrival, it was determined to be a false alarm. However, fire personnel observed that the sprinkler system plumbing appeared to be rusty and needed to be replaced. The fire department had responded on several occasions to previous alarm malfunctioning.

A subsequent inspection of the premises on March 6, 1995 revealed several violations of the local fire code.

On June 27, 1995, the defendant was charged with violating several municipal code sections.

The issue presented is whether the manner in which the fire inspectors obtained the evidence of the alleged violations of the fire code in this case was contrary to the Fourth and Fourteenth Amendments to the United States Constitution, and Section 14, Article I of the Ohio Constitution.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Section 14, Article I of the Ohio Constitution is nearly identical.

■ Although this constitutional provision speaks of the right of people to be secure in their "houses," the United States Supreme Court wrote in *See v. Seattle* (1967), 387 U.S. 541, 543, 87 S.Ct. 1737, 1739, 18 L.Ed.2d 943, 946, "the businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." In other words, "an owner or operator of a business * * * has an expectation of privacy in commercial property, which society is prepared to consider to be reasonable * * *." *New York v. Burger* (1987), 482 U.S. 691, 699, 107 S.Ct. 2636, 2642, 96 L.Ed.2d 601, 612 (citing *Katz v. United States* [1967], 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576).

■ It has been uniformly recognized that administrative inspections are governed by the Fourth Amendment. *Camara v. Mun. Court* (1967), 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930. See, also, *Seattle, supra*. Such inspections must be made pursuant to a warrant issued under general Fourth Amendment principles in the absence of some exception to the warrant requirement.

■ Warrantless administrative inspections are constitutionally permissible if there is a substantial government interest that informs the regulatory scheme pursuant to which the inspection is made, the warrantless inspection is necessary to further the regulatory scheme, and the statute's inspection program, in terms of the certainty and regularity of its application, provides a constitutionally adequate substitute for a warrant. *Burger*, 482 U.S. at 702–703, 107 S.Ct. at 2643–2644, 96 L.Ed.2d at 613–614.

■ In the case before the court, initially, the fire personnel were on the premises in response to a fire alarm. The fire units had responded several times previously only to discover that the false alarms were the result of a malfunctioning system. In response, the units completed a form requesting an inspection, as is standard procedure after response to a fire alarm.

This inspection was performed pursuant to Toledo Municipal Code 1301:7–05–04, which refers to Ohio Adm.Code 1301:7–7–02. That code section states, in pertinent part:

"1301:7–1–03 Enforcement.

"Section FM–102.0. Enforcement.

"(A) FM–102.1 Fire official: The fire marshal, any assistant fire marshal, any certified fire safety inspector, the chief of the fire department of each municipal corporation where a fire department is established, the chief of the fire department in each township where a fire department is established, and such members of any such departments as may be designated by such chief, the fire prevention officer of a municipal corporation where no fire department exists, or the fire

prevention officer of a township where no fire department is established shall be designated to enforce the provisions of this code. The fire official is herein also referred to as the code official.

"(B) FM–102.2 Inspections: The fire marshal, any assistant fire marshal, or certified fire safety inspector may inspect all structures, premises and vehicles pursuant to section 3737.14 of the Revised Code as often as may be necessary for the purpose of ascertaining and causing to be corrected, any conditions liable to cause fire, contribute to the spread of fire, interfere with fire fighting operations, endanger life or any violations of the provisions or intent of this code or any other ordinance affecting fire safety.

"(C) FM–102.2.1 Coordinated inspections: Whenever in the enforcement of the fire prevention code or another code or ordinance the responsibility of more than one enforcement official of the jurisdiction may be involved, it shall be their duty to coordinate their inspections and administrative orders as fully as practicable so that the owners and occupants of the structures shall not be subjected to visits by numerous inspectors nor multiple or conflicting orders. Whenever an inspector from any agency or department observes an apparent or actual violation of some provision of some law, ordinance or code of the jurisdiction, not within his authority to enforce, he shall report his findings to the official having jurisdiction in order that such official may institute the necessary corrective measures."

Thus, the facts establish that the inspectors in this case were not "tipped off" by any activity on the part of the defendant. Hence, the search was undertaken as a routine regulatory inspection rather than a mission to gather evidence of a crime. Since there was no shift "from administrative compliance to a quest for evidence to be used in a criminal prosecution" (*United States v. Lawson* [D.Md. 1980], 502 F.Supp. 158, 165), no search warrant was required and the evidence was properly seized. *State v. Zinmeister* (1985), 27 Ohio App.3d 313, 27 OBR 370, 501 N.E.2d 59.

Based upon these findings of fact and conclusions of law, the defendant's motion to suppress is hereby found not well taken and DENIED.

These cases are hereby referred to the Office of the Assignment Commissioner to establish a hearing date.

*Motion denied.*