[Crim. No. 31547. Second Dist., Div. One. Apr. 4, 1978.]

In re RICHARD T., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
RICHARD T., Defendant and Appellant.

**COUNSEL**

Thomas J. Wiley, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Donald J. Oeser and Marc E. Turchin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Petition charging the minor with receiving stolen property (Luger pistol) in violation of section 496, Penal Code, was sustained. He appeals from order of commitment, and raises two issues (1) insufficiency of the evidence to support findings that he had possession of the gun and that he knew the same to be stolen and (2) admissibility of statements made to his parole officer in the absence of a *Miranda* warning.

On May 6 the Espalin residence on Caminar Street near Kranz Junior High School was broken into and guns, among them a .22 caliber Luger pistol, were stolen.

On May 12 the minor was actively on parole from the Youth Authority; a condition of his parole was that he possess or own no firearms, weapons or explosive devices. Mr. Collingsworth, the minor's parole agent, received information that there was a gun in the minor's house hidden under a couch cushion and that he had been involved with a gun along with several friends; thus on May 12 he went to the minor's home where he found a gun on top of the living room couch. Collingsworth had no information concerning the minor's involvement in any crime but felt that most likely he had committed a parole violation; to investigate further he contacted the minor at a boys' club; the minor willingly accompanied him to the parole office to investigate a "possible parole violation"; Collingsworth had no knowledge that the gun was stolen and was unaware of any crime the minor may have committed.

While driving to the parole office Collingsworth had a conversation with the minor the purpose of which was "[t]o investigate primarily whether or not. . . [h]e had been involved with the gun; if he was possibly in violation of his parole at that point"; he was only investigating and the minor was not then in custody; had he placed him in custody he would have told him so and handcuffed him; it did not occur to him the minor might be in violation of any law concerning possession of a gun. He told the minor he had information that he had been involved with a gun in shooting at a bird, and the minor denied it; asked if he had been involved in a burglary of a South El Monte Community Center, the minor said he had not.

Upon arrival at the office, Collingsworth continued his investigation concerning a possible parole violation; the minor denied any involvement with a gun; he then produced the gun he had recovered from the minor's home to which the minor responded, "That's Raccoon's [Michael Guardo] gun"; the minor continued to deny any involvement with the gun and said Guardo must have brought it over the night before (May 11) to work on it, then admitted he had seen the gun and fired it at a bird, and accidentally fired the gun into a wall while inside his home, claiming he did not know it was loaded. At this point Collingsworth felt that he should have the police make a check to determine if the gun was stolen; they went to the station and it was determined that in fact it was the Espalin gun.

Officer Fentress placed the minor under arrest and took him to an interrogation room where he explained his constitutional rights, and the

minor waived the same; he then asked the minor where he had gotten the gun, and he responded he had gotten it from Raccoon [Mike Guardo], he had come over to his house on May 11 and given it to him and Guardo told him he had gotten it from several "home boys," members of a gang; he believed Guardo knew who the two boys were who committed a burglary and where they had received the gun and some other guns, and Guardo told him they had broken into a house by Kranz Junior High School; he denied being involved in the burglary.

The minor testified that on May 11 Raccoon brought the gun—then in two to four pieces—to his home to fix it; he left to go to the store and upon his return asked Raccoon where the gun was, and he said it was at Junior's house because Junior was supposed to fix it; he thought Raccoon took the gun and did not see it again until Collingsworth showed it to him at the parole office; he physically held the gun only twice, each time for about five seconds; Raccoon had told him he took the gun from "the guy"; he thought the gun "might be possibly stolen"; several days later he heard that "these guys had broken into a house on Caminar Street"; he thought a piece from the gun was missing.[1]

■    "In order to establish the commission of the crime of receiving stolen property it must be established by substantial evidence (1) that the particular property was stolen, (2) that the accused received, concealed or withheld it from the owner thereof, and (3) that the accused knew the property was stolen. [Citations.]" (*People* v. *Vann* (1974) 12 Cal.3d 220, 224 [115 Cal.Rptr. 352, 524 P.2d 824]; *People* v. *Martin* (1973) 9 Cal.3d 687, 695 [108 Cal.Rptr. 809, 511 P.2d 1161]; *People* v. *Kunkin* (1973) 9 Cal.3d 245, 249 [107 Cal.Rptr. 184, 507 P.2d 1392, 57 A.L.R.3d 1199].)    ■    The minor contends that there is "no showing beyond a reasonable doubt" that he knowingly possessed the gun or that the gun was hidden in his house or that he knew someone else had concealed it therein; and that there is no substantial evidence on the issue of knowledge that the gun was stolen.

■    "The standard which is applied in weighing the sufficiency of evidence is not whether guilt was proved beyond a reasonable doubt but whether there is substantial evidence in support of the findings of the trier of fact. [Citation.]" (*People* v. *Martin, supra* (1973) 9 Cal.3d 687,

---

[1]On rebuttal Officer Fentress testified it did not appear that any pieces were missing from the Luger.

695.) ■ Viewing the evidence in a light most favorable to the respondent and presuming in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence (*People* v. *Vann, supra* (1974) 12 Cal.3d 220, 225), we conclude that there is such evidence.[2] The record shows that the minor received, concealed, and withheld the gun. The gun was found in the minor's residence in plain sight on the couch; when questioned about it, he denied any connection with it, however, when confronted with the gun itself, he admitted that a friend brought it to his home the day before and that he had seen the gun and fired it at a bird and also had accidentally fired it into the wall while inside his home. Clearly the gun was in the minor's home with his knowledge for at least a day. To Officer Fentress he admitted that Guardo had "given" the gun to him. The minor admitted at trial that twice he had physically handled the gun, both times for his personal use—to shoot a bird, and to examine the gun, accidentally firing into the wall. Under the circumstances here, this is sufficient to show physical possession in the minor. ■ However, "[p]hysical possession of the property in the accused is not necessary to constitute receipt of stolen goods if they were concealed on his premises by others with his knowledge or consent. [Citations.]" (*People* v. *Candiotto* (1960) 183 Cal.App.2d 348, 349-350 [6 Cal.Rptr. 876].)

Knowledge that property was stolen seldom can be proved by direct evidence, and resort often must be made to circumstantial evidence. (*People* v. *Vann, supra* (1974) 12 Cal.3d 220, 224.) Possession having been established, applicable is the rule that "possession of stolen property, accompanied by no explanation or unsatisfactory explanation, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. Corroboration need only be slight and may be furnished by conduct of the defendant tending to show his guilt. (*People* v. *Lyons,* 50 Cal.2d 245, 258 [324 P.2d 556]; *People* v. *McFarland,* 58 Cal.2d 748, 754 [26 Cal.Rptr. 473, 376 P.2d 449]; *People* v. *Perez,* 40 Cal.App.3d 795, 799 [115 Cal.Rptr. 405].)" (*People* v. *Myles, supra* (1975) 50 Cal.App.3d 423, 428.) ■ There is abundant corroboration in the case at bench. The minor was found in possession of the gun soon after it was stolen (*People* v. *Siegfried* (1967) 249 Cal.App.2d 489, 493 [57 Cal.Rptr. 423]); at first he denied involvement with a gun, then only after being confronted with it did he admit that his friend had brought it to his home; later he told Officer Fentress that

---

[2]*People* v. *Myles* (1975) 50 Cal.App.3d 423 [123 Cal.Rptr. 348] and *People* v. *Zyduck* (1969) 270 Cal.App.2d 334 [75 Cal.Rptr. 616] relied on by appellant on the issue of possession are inapposite because of their dissimilar factual situations.

Guardo came to his home on May 11 and gave him the gun, he believed Guardo knew who the two boys were who had committed a burglary and where they had received that gun and some others, and that the boys had broken into a house near Kranz Junior High School; finally, the minor admitted, "I thought it might be possibly stolen you know." (See *People v. Vann, supra* (1974) 12 Cal.3d 220, 225; *People v. Candiotto, supra* (1960) 183 Cal.App.2d 348, 349-350.) ■ "A defendant's '. . . admissions and contradictory statements coupled with his possession of the stolen property alone are sufficient to support a finding of guilt.' " (*People* v. *Bugg* (1962) 204 Cal.App.2d 811, 817 [22 Cal.Rptr. 896].)

■ The second issue is whether the parole officer was obliged to give the warning under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. The procedural safeguards in *Miranda* come into play only where "custodial interrogation" is involved, and by "custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda* v. *Arizona, supra* (1966) 384 U.S. 436, 444 [16 L.Ed.2d 694, 706, 86 S.Ct. 1602, 10 A.L.R.3d 974]; *Oregon* v. *Mathiason* (1977) 429 U.S. 492, 495 [50 L.Ed.2d 714, 719, 97 S.Ct. 711].) In the context of this case we hold that there was no custodial interrogation as the term is defined in *Miranda* and the admissions made by the minor to his parole officer were admissible.

A parolee-parole officer relationship existed between the parties, and although parolees are entitled to the protections afforded by the *Miranda* warnings (*In re Martinez* (1970) 1 Cal.3d 641, 647 [83 Cal.Rptr. 382, 463 P.2d 734]; *People* v. *Gastelum* (1965) 237 Cal.App.2d 205, 209 [46 Cal.Rptr. 743]), not every contact arising out of the parole relationship requires such warning. The contact here was made solely to investigate the possibility that the minor might have violated a condition of his parole. At that time the parole officer was unaware that the gun was stolen or of any crime in which the minor may have been involved. The minor was not home at the time Collingsworth found the gun; had he been, perhaps the interview would have taken place in his own home. Thus Collingsworth had to contact him elsewhere, and the minor willingly went with his parole officer; Collingsworth did not place the minor in custody because he only wanted to investigate a possible parole violation, but had he done so he would have told him and handcuffed him. He testified it did not occur to him that the minor might have been in violation of the law concerning possession of a gun. Appellant submits

that he was in custody because "Officer Collingsworth testified that he would not have released the minor at the point where he decided to transport the Minor to the El Monte Police Station." His claim fails for two reasons. First, no such testimony is found in the record; second, at the point "where [Collingsworth] decided to transport the minor to the El Monte Police Station" and have the gun checked out, and thereafter, nothing the minor said to Collingsworth was offered in evidence against him.[3] Thus our concern is the admissibility of the statements made by the minor to the parole officer *during* his ride to the parole office and *at* the office *before* the parole officer decided to have the gun checked out. In this connection, the evidence fairly supports a finding that the minor was not deprived of his freedom of action in any significant way; and fails to show that when the interview took place the process had shifted from the investigatory stage to the accusatory stage of the criminal process. It is clearly evident that during the time the parole officer questioned the minor his queries were confined solely to his investigation of a possible parole violation; at no time during the investigation did he direct questions to a new offense[4] or suspect the minor of criminal activity, or was he aware that the minor might be involved in any criminal offense.

■ A paroled minor has liberty under supervision and, as in the case of all parolees, this liberty is conditional and he is still in the constructive custody of the Youth Authority and subject to supervision of his parole officer. "Because the public is entitled to maximum protection in the administration of the parole system, the process of rehabilitation takes place under the vigilant and tutelary eye of the parole officer." (*People* v. *Denne* (1956) 141 Cal.App.2d 499, 508 [297 P.2d 451].) The parole officer's supervision is of necessity a close one; from him the minor receives guidance and advice. To aid him, the parole officer is accorded broad visitorial powers and he must keep himself informed of the minor's activities and guard against possible lapses that might jeopardize

---

[3] In fact no conversation thereafter took place with the exception of a discussion of the ramifications of a parole violation and the need to have the gun checked out.

[4] It is true that Collingsworth asked the minor if he had been involved in a burglary of a South El Monte Community Center, and the minor "denied that." But it is readily apparent that this question was asked at the very outset, while they were in the car, after the minor denied he had been involved with a gun in shooting at a bird, but no further reference was made to this burglary or any other. Collingsworth testified he had no information that the minor had committed any crimes. Those two questions were the only ones asked by Collingsworth during the ride to the parole office. The one inquiry concerning a burglary, not involved herein, is not sufficient in the circumstances of this case to convert a pure investigation into an accusatory interrogation.

his freedom. Thus to hold that a parolee is entitled to *Miranda* warnings every time he is interviewed or questioned by his parole officer concerning his parole would materially hamper, if not destroy, the entire purpose of parole. Although in California a parole officer of the Youth Authority is a "peace officer" under section 830.5, Penal Code, Collingsworth in no manner assumed any duties other than those of a parole officer, in fact, when he suspected the gun might have been stolen, he took the minor to the police station. The questions asked by Collingsworth were designed to determine if a violation of a parole condition relating to possession of a gun had occurred; he was not conducting an investigation into suspected criminal activity which focused on the minor. The parole relationship is analogous to the probationer-probation officer relationship, and of the latter the District Court of Florida stated in *Nettles* v. *State* (1971) 248 So.2d 259, at page 260 ". . . [i]f upon every visit or contact with the probation officer the probationer is entitled to a [Miranda] warning then the relationship between the probation officer and the probationer would be a strained one indeed and the purpose of probation would be materially affected." *Nettles* has been followed in other jurisdictions, i.e., *Cunningham* v. *State* (Tex. 1972) 488 S.W.2d 117, 120; *State* v. *Johnson* (1972) 87 S.D. 43 [202 N.W.2d 132, 134].)

Of course, had the minor been suspected of committing a new offense and been questioned by the parole officer concerning it, the case well might compel a different conclusion. We note that out-of-state courts generally recognize that where a parole officer is investigating the commission of a new offense and where he places the parolee in custody he must comply with *Miranda*. (*State* v. *Davis* (1975) 67 N.J. 222 [337 A.2d 33, 35]; *State* v. *Lekas* (1968) 201 Kan. 579 [442 P.2d 11, 15-16]; *State* v. *Magby* (1976) 113 Ariz. 345 [554 P.2d 1272, 1275-1276] [Probation].)

Whatever detention was inherent in picking up the minor and driving him to the parole office occurred in the course of the due exercise of Collingsworth's duties as the minor's parole officer solely for the purpose of investigating a possible parole violation. A detention not amounting to an arrest does not trigger the need for *Miranda* warnings although a detention for investigation ripens into an arrest requiring such warning as soon as probable cause to arrest has been established. (*In re James M.* (1977) 72 Cal.App.3d 133, 137 [139 Cal.Rptr. 902]; *People* v. *Manis* (1969) 268 Cal.App.2d 653, 663-669 [74 Cal.Rptr. 423].) Once the parole officer determined that a check should be made to discover to whom the

gun belonged he immediately took the minor to the police station and questioned him no more concerning his possession of the gun. At the station, after it was determined the gun had been stolen and prior to any interrogation, the minor parolee was arrested and properly advised of his *Miranda* rights. (*In re Martinez* (1970) 1 Cal.3d 641, 647 [83 Cal.Rptr. 382, 463 P.2d 734].) It was then, and for the first time, that the minor admitted that he had gotten the gun from Guardo who had gotten it from some boys who had committed a burglary.

The order is affirmed.

Wood, P. J., and Hanson, J., concurred.