[Crim. No. 38195. Second Dist., Div. Five. Feb. 16, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES DOUGLAS SHOPE, Defendant and Appellant.

## COUNSEL

Frederick L. McBride for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Elizabeth A. Baron, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HASTINGS, J.**—Appellant was convicted after a court trial of three counts of receiving stolen property (Pen. Code, § 496). He was sentenced to two years in state prison on each count, the sentences to run concurrently. He now appeals from the judgment of conviction.

Three contentions are raised on appeal: (1) There was insufficient evidence to convict appellant of a violation of Penal Code section 496;

(2) appellant's statements to police, prior to being arrested, should have been excluded as being a custodial interrogation without benefit of *Miranda* warnings; and (3) the failure of trial counsel to seek a pretrial suppression of evidence (Pen. Code, § 1538.5) denied appellant the effective assistance of counsel.

*Facts*

Appellant is the proprietor of Wagon Wheel Auto Salvage, which he purchased in January of 1978. On November 2, 1978, Deputy Sheriff James A. Raines of the sheriff's department commercial crimes unit (vehicle theft) went to the Wagon Wheel to inspect the salvage yard. He announced his purpose to the "counter man" and asked to see the owner (appellant), who was not there at the time. Along with Sheriff's Sergeant Donald Bricker, he proceeded to take a tour of the yard. He saw several late-model "expensive-type" cars, a couple of which were "cut up" and the pieces scattered throughout various parts of the yard. His 10-1/2 years' experience investigating auto thefts led him to believe that these cars were stolen, since many showed no sign of collision damage and new car parts are highly valued in the auto salvage business.

Approximately 20 to 30 minutes after Deputy Raines arrived at the yard, he met appellant, who had just returned. He asked appellant to accompany him through the yard. The deputy pointed out parts of about seven different cars and asked appellant if he had any "paperwork" for them (either a "Notice of Acquisition" required by the Department of Motor Vehicles whenever a vehicle is purchased whole and dismantled on the premises, or bills of sale for the various parts). Appellant was unable to produce paperwork for any of the items. Appellant then said he had bought the yard in January of 1978 and everything the deputy pointed out was there at the time of the sale.

Deputy Raines ran a police vehicle check and was informed that certain of the parts found in the yard were from a stolen vehicle. The officers then took appellant to the Lakewood Sheriff's station, where he was arrested and given *Miranda* warnings.

It was determined that the parts removed from the premises were from three stolen vehicles: a 1972 Ford Ranchero, stolen from Jack Coleman on July 30, 1978; a 1978 Lincoln Continental Mark V, stolen from Barbara Blakely in September, 1978; and a 1976 Chevrolet Camaro, stolen from Garry Richardson in September, 1978. (All three

owners testified at the trial. They identified their vehicles, or what was left of them, from police photographs and from inspections at various police impound yards. In addition, they provided keys to the police, which keys fit locks on the stolen vehicles.)

Appellant testified in his own behalf. He said that he bought the Wagon Wheel early in 1978 and had no previous experience in the auto salvage business, although he had owned a body shop for several years. Since he was out of the yard most of the time, much of the purchasing of autos and auto parts was done by two of his employees, a "counter man" and a bookkeeper who also took care of the paperwork required by the Department of Motor Vehicles. All purchases were in cash, and the only records as to how much was paid for each item were "paid out" slips, used to account for the cash taken from the cash drawer. Appellant did not have a cash register. He said it was possible for stolen vehicles and/or parts to get into his yard without him knowing, since his employees bought and sold all day long, with or without him there.

On the day he was arrested, he tried to locate the paperwork required by Deputy Raines, but could not do so. He said when he bought the yard, someone with more experience in the auto salvage business told him that if the police came and he did not have paperwork for a particular item, just to say that the item was there when he bought the yard. He didn't know how pieces of stolen autos got into his yard.

To rebut appellant's testimony that all of the stolen parts were there when he purchased the business in January of 1978, Sergeant Bricker testified that he had inspected the Wagon Wheel in March of 1978, in connection with another vehicle theft, and there were no late-model cars there at that time. Also, as stated above, it was shown that all of the vehicles in question were stolen during the period from July to September of 1978.

I

*Sufficiency of Evidence*

■ In order to sustain a conviction for the crime of receiving stolen property, it must be established by substantial evidence that the particular property was stolen, and that the accused received, concealed or withheld the property from its owner, knowing it was stolen. (*In re Richard T.* (1978) 79 Cal.App.3d 382 [144 Cal.Rptr. 856].) ■ Ap-

pellant contends that, aside from statements to the officers, which he feels the trial court should have suppressed,[1] the evidence in this case was insufficient to find that he had personal knowledge that the property in his possession had been stolen.

■ Whenever the evidentiary support for a conviction is challenged on appeal, we will review the entire record, in the light most favorable to the judgment below, to determine whether it discloses substantial evidence such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People* v. *Johnson* (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738].)

Although knowledge that property has been stolen can seldom be proved by direct evidence (*People* v. *Vann* (1974) 12 Cal.3d 220, 224 [115 Cal.Rptr. 352, 524 P.2d 824]), "possession of stolen property, accompanied by no explanation or unsatisfactory explanation, ... will justify an inference that the goods were received with knowledge that they were stolen. Corroboration need only be slight and may be furnished by conduct of the defendant tending to show his guilt." (*In re Richard T., supra*, 79 Cal.App.3d 382, 388, citing *People* v. *Myles* (1975) 50 Cal.App.3d 423, 428 [123 Cal.Rptr. 348] [citations omitted].)

■ Appellant does not dispute the fact that stolen property was found at the business which he owned. Under an administrative action to revoke or suspend his automobile dismantler's license, possession of the property alone would give rise to a prima facie presumption that he knew the property was stolen. (Veh. Code, § 11510.) This is a criminal proceeding, however, and so we give appellant the benefit of the doubt and require corroborating evidence to show that appellant in fact knew the property was stolen.

There was ample corroboration in this case. Appellant did not have the business records which he was required to keep on each vehicle. The paperwork which he introduced at trial was of little help to his case. He produced receipts for a rear body section and doors to a 1976 Camaro, which parts were purchased in July of 1978. However, the Camaro owned by Mr. Richardson was not stolen until September of 1978. Appellant did not offer any records pertaining to the specific vehicles which were the subject of this prosecution. There was also evidence

---

[1]We conclude that this evidence was properly admitted (see part II, *infra*).

that, despite appellant's testimony to the contrary, the vehicles in question were acquired whole and dismantled on appellant's premises. For instance, parts to Mrs. Blakely's Lincoln were found in various parts of the yard. When all of these were put together, all of the parts matched, down to the trim, and the torch marks fit together like "torn pieces of paper." There was no evidence of any collision damage to the car.

The evidence presented by the People was countered only by appellant's less than satisfactory explanation as to how he acquired the property in question. There was substantial evidence to support the court's conclusion that appellant knew he was dealing in stolen auto parts.

## II

■ Secondly, appellant contends that the officers were required to advise him of his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], in connection with their inspection of the yard, and therefore all the statements he made to the officers during the inspection should have been suppressed. The trial court ruled that no *Miranda* warnings were required, since the officer was conducting an inspection authorized by statute and appellant, as a licensee, had a duty to provide the information which the officer requested.

At issue is the applicability to this case of Vehicle Code section 320,[2] on which both the officer and the court relied as authority for the inspection of appellant's premises.

---

[2]Section 320 provides: "'Established place of business' is a place actually occupied either continuously or at regular periods by:

"(a) A dealer, manufacturer, manufacturer branch, distributor, distributor branch, or automobile driving school where the books and records pertinent to the type of business being conducted are kept. The place of business shall have an office and in the case of a dealer or manufacturer shall have a display or manufacturing area situated on the same property where the business peculiar to the type of license issued by the department is or may be transacted. When a room or rooms in a hotel, roominghouse, apartment house building, or a part of any single- or multiple-unit dwelling house be used as an office or offices of an established place of business, such room or rooms shall be devoted exclusively to and occupied for the office or offices of the dealer, manufacturer, manufacturer branch, distributor, distributor branch, or automobile driving school, shall be located on the ground floor, and shall be so constructed as to provide a direct entrance into such room or rooms from the exterior of the building.

"(b) An automobile dismantler where the books and records pertinent to the type of business being conducted are kept. The place of business shall have an office and a dis-

Relying on *Addison* v. *Department of Motor Vehicles* (1977) 69 Cal. App.3d 486 [138 Cal.Rptr. 185], appellant claims that the last paragraph of section 320 specifically limits inspection of records during business hours to those licensees "conducting more than one type of business from an establishment." That paragraph reads as follows: "A licensee issued an occupational license by the department and conducting more than one type of business from an establishment, as herein defined, shall provide a clear physical division between the types of business involving vehicles or their component parts. *The place of business shall be open to inspection of the premises, pertinent records and vehicles by any peace officer during business hours.*" (Italics added.)

This language was construed by the *Addison* court to mean what appellant says it means, namely, that the only auto dismantling businesses open to inspection are those with more than one type of business on the premises. While we agree that the language in the last paragraph is not a model of clarity, we are satisfied that this interpretation is incorrect and contrary to the purpose of the statute.

While the majority of those engaged in the repairing, selling or dismantling of used vehicles are honest business people, some of these businesses are used as "fronts" by persons engaging in the sale of stolen autos and auto parts. This occurs often enough that the licensing and registration of such businesses must be strictly regulated.[3] One of these regulations is Vehicle Code section 320, which requires the records of certain auto dismantlers to be open during business hours. "Quite obviously, regulation by city and state government over automobile dismantlers is part of the continued effort by law enforcement to eliminate theft of cars and the profit associated with that activity. The elaborate provisions for registration and licensing of businesses engaged in dismantling vehicles or selling used vehicles was 'designed to segre-

---

mantling area located in a zone properly zoned for that purpose by the city, county, or city and county. A place of business of an automobile dismantler which qualified as an 'established place of business' before the enactment of amendments to this section at the 1970 Regular Session of the Legislature shall be deemed to be an 'established place of business' as defined in this section.

"A licensee issued an occupational license by the department and conducting more than one type of business from an establishment, as herein defined, shall provide a clear physical division between the types of business involving vehicles or their component parts. The place of business shall be open to inspection of the premises, pertinent records and vehicles by any peace officer during business hours."

[3]See also: Vehicle Code sections 2805, 11510 et seq., 10656; California Administrative Code, title 13, section 413.01 et seq.

gate the honest businessman from the thief and the fence .... [A] state may impose on the licensing of a business, so fraught with public danger, a requirement that its premises be open to orderly inspections.'" (*People* v. *Woolsey* (1979) 90 Cal.App.3d 994, 1003 [153 Cal.Rptr. 746], citing *People* v. *Grey* (1972) 23 Cal.App.3d 456, 461 [100 Cal.Rptr. 245].) Section 320 is part of this elaborate statutory scheme. Because inspections pursuant to that section may be conducted without a search warrant or probable cause (*People* v. *Lopez* (1981) 116 Cal. App.3d 600, 607 [172 Cal.Rptr. 236]; *People* v. *Woolsey, supra*, 90 Cal.App.3d 994), section 320 requires a "clear physical separation" between businesses which are covered by that section and those which are not. The purpose of this "physical division" is not to exempt single-business licensees such as appellant from the inspection requirements, but to protect the *non*-regulated business from the warrantless inspections authorized by section 320. Thus, section 320 is clearly applicable to appellant.

Appellant knew when he applied for his dismantler's license that he was required to maintain and furnish records for inspection by police officers and representatives of the Department of Motor Vehicles. During the inspection in question appellant's conversation with Deputy Raines was limited to a discussion of these books and records. That discussion did not amount to a "custodial interrogation," and *Miranda* warnings were not required at that time.

### III

■ Finally, appellant claims that he was denied effective assistance of counsel because defense counsel failed to make a pretrial motion to suppress evidence (Pen. Code, § 1538.5). This contention is also without merit.

During the cross-examination of Deputy Raines, defense counsel indicated he wanted to make a motion to exclude all of the deputy's testimony on the grounds that no warrant was obtained for the search. The court correctly replied that the officers were not required to get a warrant. The prosecutor pointed out that a suppression motion "is supposed to be made before the trial starts ... so that a ruling can be obtained without putting the defendant in jeopardy." The court then denied the motion. Appellant interprets this to mean that a different result would have occurred if the motion had been made before trial. It is clear, however, that denial of the motion was not addressed to its

timeliness, but to its lack of merit. Appellant cannot have been prejudiced by counsel's failure to bring a futile pretrial suppression motion. "It is not incumbent upon trial counsel to advance meritless arguments or to undertake useless procedural challenges merely to create a record impregnable to assault for claimed inadequacy of counsel." (*People* v. *Shelburne* (1980) 104 Cal.App.3d 737, 744 [163 Cal.Rptr. 767].)

The judgment is affirmed.

Stephens, Acting P. J., and Ashby, J., concurred.

A petition for a rehearing was denied March 9, 1982, and appellant's petition for a hearing by the Supreme Court was denied April 15, 1982. Kaus, J., did not participate therein.