[No. B024708. Second Dist., Div. One. Dec. 29, 1987.]

TERRY YORK IMPORTS, INC., Plaintiff and Appellant, v. DEPARTMENT OF MOTOR VEHICLES, Defendant and Respondent.

**COUNSEL**

Sheldon Cohen for Plaintiffs and Appellant.

David Negri, Manning, Leaver, Bruder & Berberich and Brent W. Smith as Amici Curiae on behalf of Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Henry G. Ullerich and Thomas Scheerer, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**HANSON (Thaxton), J.—**

### INTRODUCTION

This is an appeal taken from the denial of a petition for writ of mandate in the superior court. Petitioner Terry York Imports, Inc. (hereinafter York or petitioner), sought to vacate a decision by respondent Department of Motor Vehicles, State of California (hereinafter DMV), revoking petitioner York's occupational license. The trial court upheld the administrative ac-

tion and denied petitioner York relief. Petitioner has filed a timely appeal to this court. We reverse the judgment of the trial court.

FACTUAL AND PROCEDURAL HISTORY

Petitioner York engaged in the retail sale of used imported automobiles at 16422 Ventura Boulevard, Encino, California until early summer 1985. On June 20, 1985, DMV investigator Bolden picked up three "report of sale" books from petitioner York at the Ventura Boulevard address. Bolden's review of these books resulted in a decision to conduct a more thorough review of petitioner's business at that address.

On October 10, 1985, Bolden and two other DMV employees met with Terry York, president of petitioner, another individual and York's attorney to inform them of this decision, and of the DMV's desire to be afforded some unspecified access to petitioner's business records. Bolden was told York needed time to decide how to respond to the DMV's request. On November 8, 1985, Bolden was told the dealer records would be available on November 12, 1985, but finally, on November 18, 1985, petitioner's attorney informed the investigator that the records would not be made available.

Bolden had warned petitioner and its attorney that failure to produce all the records of the dealership violated Vehicle Code sections 320, 11713, subdivision (c), and 410.00 of title 13, California Administrative Code. When advised of petitioner's final decision not to turn over the records, Bolden again warned petitioner that failure to comply would result in an immediate summary suspension of the dealership license.

On November 21, 1985, the DMV filed Administrative Accusation No. D-3309 against York, seeking to revoke or suspend occupational license No. 15103. It alleged that York had violated California Vehicle Code sections 320 and 11713, subdivision (c), as well as section 410.00, title 13, California Administrative Code. It further alleged that these asserted violations constituted grounds for revocation or suspension of York's license pursuant to Vehicle Code section 11705.[1]

On December 10, 1985, York voluntarily surrendered his special plates and license No. 15103 to Bolden.

On December 17, 1985, an administrative hearing was conducted in Los Angeles. DMV investigator Bolden testified concerning the refusal to

---

[1] Unless otherwise specified, the code sections discussed herein will be those of the Vehicle Code.

permit him further access to dealership records. He admitted that he had not responded to petitioner's attorney's attempts to obtain from him specific information about what documents the dealership possessed that Bolden was particularly interested in seeing. Bolden did testify that he had contacted the Los Angeles County District Attorney's office concerning possible illegal sales by petitioner.

The president of petitioner corporation, Terry York, also testified at the administrative hearing. Although president of petitioner, he was not personally involved in the routine management of petitioner, including sales; that function had been performed by an individual named Jack Zimmer, who had died in 1984. After Zimmer's death, Terry York addressed problems concerning the title documents involved in sales transactions of petitioner. York testified that the petitioner, his dealership, had operated in the "grey area" of the marketplace; that he had a staff presently engaged in clearing up those problems; that he was concerned primarily about seeing that the dealership's customers had clear titles to vehicles they had purchased there; and that as of the time of the hearing a substantial percentage of the problems had been cleared up. York also testified that he and his attorney knew that the DMV had been in touch with the district attorney's office, and that there was a possibility of criminal prosecution.

At the hearing, at issue was the correct interpretation of provisions of the Vehicle Code, as well as the validity of regulations based on the code and set forth in section 410.00, title 13, of the California Administrative Code. Both sides submitted briefs on the matter.

On March 5, 1986, the administrative law judge rendered his decision. He determined that petitioner had violated section 410.00, title 13, of the California Administrative Code, and that such violation constituted grounds for license revocation pursuant to Vehicle Code section 11705, subdivision (a)(10). He found there was no violation of Vehicle Code section 11713, subdivision (c). The DMV adopted the proposed decision of the administrative law judge on March 24, 1986, effective April 23, 1986, and revoked petitioner's license.

The petition for mandate and this appeal followed.

### STANDARD OF REVIEW

It is well established that an occupational license involves a vested fundamental right. As was explained in *Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242], when an adminstrative tribunal renders a decision affecting such a right, "the courts of California have

undertaken to protect such rights, and particularly the right to practice one's trade or profession, from untoward intrusions by the massive apparatus of government. If the decision of an administrative agency will substantially affect such a right, the trial court not only examines the administrative record for errors of law but also exercises its independent judgment upon the evidence disclosed in a limited trial de novo."

A reviewing court, in contrast to the trial court, is limited to inquiry into the sufficiency of the evidence supporting the trial court's determination, once having ascertained that the trial court has applied the correct standard of review. In the case at bench, the trial court announced in its minute order that it had exercised independent judgment in making its determination.

The principal issues presented by this appeal, however, do not turn upon evidentiary review, but rather on statutory construction. ■ Interpretation and construction of statutes ordinarily involve resolution of questions of law rather than fact. As with any other writing, appellate courts exercise an independent function of interpretation or construction of statutes, in the absence of a trial court ruling based upon extrinsic evidence. (*Southern California Edison Co.* v. *State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8 [102 Cal.Rptr. 766, 498 P.2d 1014]; *Parsons* v. *Bristol Dev. Co.* (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].) In the case at bench, the trial court made its determination on the basis that the interpretation of Vehicle Code section 320 contained in *People* v. *Shope* (1982) 128 Cal.App.3d 816, 822-824 [180 Cal.Rptr. 567], was more persuasive than other authority; the trial court's minute order so stated. Thus it is this reviewing court's function to independently assess the correctness of that ruling.

## ISSUE PRESENTED

Simply put, the determinative issue presented by the case at bench is whether the Vehicle Code confers upon the DMV the right to conduct a warrantless and unlimited search of the business records of a retail car dealership. We conclude that the Vehicle Code does not confer that right. Our reasoning follows.

## DISCUSSION

### I

■ The rules of statutory construction are summarized as follows: " 'We begin with the fundamental rule that a court "should ascertain the

intent of the Legislature so as to effectuate the purpose of the law." In determining such intent "[t]he court turns first to the words themselves for the answer." We are required to give effect to statutes "according to the usual, ordinary import of the language employed in framing them." "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." "[A] construction making some words surplusage is to be avoided." "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' " (Citations omitted.) (*Palos Verdes Faculty Assn.* v. *Palos Verdes Peninsula Unified Sch. Dist.* (1978) 21 Cal.3d 650, 658-659 [147 Cal.Rptr. 359, 580 P.2d 1155].)

We construe statutes "with reference to the entire statutory system of which it forms a part in such a way that harmony may be achieved among the parts." (*People* ex rel. *Younger* v. *Superior Court* (1976) 16 Cal.3d 30, 40 [127 Cal.Rptr. 122, 544 P.2d 1322].) Provisions within an act should be construed so as to accomplish the legislative purpose as determined from the entire statutory scheme. (*Robinson* v. *Superior Court* (1984) 158 Cal.App.3d 98, 102 [204 Cal.Rptr. 366].)

■ In the case at bench, with the exception of section 320, we have been unable to find any expression of legislative intent in the Vehicle Code which empowers the DMV to conduct the type of search attempted in the case at bench, although the DMV has long sought such power.

Review of the statutory scheme demonstrates instead that the Legislature has bestowed some specific powers on the DMV (and other law enforcement personnel) to address specific problems, rather than general authority to conduct warrantless searches in the field of the *business records* of retail car dealerships.

Other reviewing courts have consistently recognized the legislative preference for specific rather than general grants of authority, and have strictly construed the powers given. Section 2805, for example, authorizes "a member of the California Highway Patrol, or a member of a city police department or county sheriff's office whose primary responsibility is to conduct vehicle theft investigations" to inspect vehicles and "any identifiable vehicle component thereof" in a wide variety of places, including new and used car lots. These searches are specifically described as those "[f]or the purpose of locating stolen vehicles. . . ." and subdivision (c) provides that

"[w]henever possible, inspections conducted pursuant [to this section] shall be conducted at a time and in a manner so as to minimize any interference with, or delay of, business operations."

Courts interpreting this section have found it does not violate the Fourth Amendment, United States Constitution, because the permitted search is one conducted under reasonable circumstances and limited in nature. (*People* v. *Woolsey* (1979) 90 Cal.App.3d 994 [153 Cal.Rptr. 746].) As was explained in *Lewis* v. *McMasters* (9th Cir. 1981) 663 F.2d 954, 955, "section 2805 does not give law enforcement officers authority to conduct general searches of business premises." *People* v. *Lopez* (1981) 116 Cal.App.3d 600, 606-607 [172 Cal.Rptr. 236], certiorari denied *Lopez* v. *California* (1981) 454 U.S. 964, 70 L.Ed.2d 379, 102 S.Ct. 504, and *People* v. *Doty* (1985) 165 Cal.App.3d 1060 [212 Cal.Rptr. 81], also take the view that section 2805 is to be literally rather than broadly construed; the right to inspect is the right to inspect vehicles, and the objective is to curtail the theft and resale of vehicles and their parts.

DMV officials and investigators have peace officer status with inspection rights similar to those set forth in section 2805. (§ 1655, and see § 10656.)

Section 11714 provides for the issuance by the DMV of licenses and special plates to car dealers. Subdivision (c) provides that "[t]he department shall also furnish books and forms as it may determine necessary. Such books and forms are and shall remain the property of the department and may be taken up at any time for inspection."

Subdivision (c) has also been strictly construed as limiting the DMV to inspections of exactly what is described in the section: books and forms of the DMV, provided to dealers for record keeping as required by the department. In *People* v. *Conway* (1974) 42 Cal.App.3d 875, 891 [117 Cal.Rptr. 251], the Court of Appeal observed that other books and records of a dealership were not subject to the inspections contemplated by section 11714, subdivision (c).

Section 320, upon which the DMV relies now and has unsuccessfully relied upon in the past to provide the more general power it seeks to search the business records of car dealerships, is actually a provision of definition in the beginning of the code. Before the 1985 amendment, it provided as follows: "(a) 'Established place of business' is a place actually occupied either continuously or at regular periods by:

"(1) A dealer, remanufacturer, remanufacturer branch, manufacturer, manufacturer branch, distributor, distributor branch, automobile driving

school, or traffic violator school where the books and records pertinent to the type of business being conducted are kept. The place of business shall have an office and, in the case of a dealer, manufacturer, or remanufacturer, shall have a display or manufacturing area situated on the same property where the business peculiar to the type of license issued by the department is or may be transacted. When a room or rooms in a hotel, roominghouse, apartment house building, or a part of any single- or multiple-unit dwelling house is used as an office or offices of an established place of business, the room or rooms shall be devoted exclusively to and occupied for the office or offices of the dealer, manufacturer, manufacturer branch, remanufacturer, remanufacturer branch, distributor, distributor branch, automobile driving school, or traffic violator school, shall be located on the ground floor, and shall be so constructed as to provide a direct entrance into the room or rooms from the exterior of the building. A dealer who does not offer vehicles for sale at retail, or a dealer who is a wholesaler involved for profit only in the sale of vehicles between licensed dealers, shall have an office, but a display area is not required.

"(2) An automobile dismantler where the books and records pertinent to the type of business being conducted are kept. The place of business shall have an office and a dismantling area located in a zone properly zoned for that purpose by the city, county, or city and county. A place of business of an automobile dismantler which qualified as an 'established place of business' before September 17, 1970, [is] an 'established place of business' as defined in this section.

"(b) A licensee issued an occupational license by the department and conducting more than one type of business from an establishment, as herein defined, shall provide a clear physical division between the types of business involving vehicles or their component parts. *The place of business shall be open to inspection of the premises, pertinent records, and vehicles by any peace officer during business hours.*" (Stats. 1984, ch. 1037, § 1, pp. 3585-3586; italics added.)

Much confusion and speculation has surrounded the proper interpretation of subdivision (b). The history of the two sentences in this subdivision predates 1957, and as the brief of Attorney General, who represents respondent DMV on appeal, pointed out, the two sentences in subdivision (b) have been consistently retained *together* through the years while the Legislature amended and changed section 320. In 1970, section 320 was broken down into subdivisions, but the relationship of the two sentences remained the same. Respondent DMV argues that subdividing section 320 had the "ironic and unintended result" of making it appear that the right to inspect

mentioned in the last sentence of section 320, subdivision (b) did not apply to car dealers generally but only to those who maintained other businesses on the same premises. Despite this argument, we note that the Legislature has never attempted to clarify section 320, subdivision (b), although it has had many opportunities to do so.

The DMV finds in section 320, subdivision (b) the authority for warrantless inspection rights of the records and books of car dealerships, despite its statutory language and the interpretation of that language contained in *Addison* v. *Department of Motor Vehicles* (1977) 69 Cal.App.3d 486 [138 Cal.Rptr. 185].

*Addison* involved the request for declaratory relief by some wholesale car auctioneers when the DMV demanded, relying upon section 320, to inspect their business records without limitation. *Addison* stated that "[t]he DMV urges that the last sentence of section 320 'was not intended to be applicable *only* when a licensee maintained more than one type of business, but rather was intended to cover all licensees as defined in the section.'" (*Id.,* at p. 495.)

The Court of Appeal in *Addison* rejected the DMV's position, and construed the last two sentences of section 320, subdivision (b) as applicable *only* to those businesses where more than one business is located on the same business premises. Concluded the Court of Appeal, "If the Legislature had desired the DMV to have the authority to inspect any and all places of business, it would have placed the last sentence in a separate paragraph, or included it as part of the preceding paragraphs, or noted it in some other section of the Vehicle Code." (*Id.,* at p. 496.)

The Legislature has done none of these things since *Addison*. In 1985, it removed subdivision (b) from section 320 to section 1670. The subdivision appears to continue to address the problem the Legislature perceives when two businesses occupy the same premises.

Respondent DMV characterizes the *Addison* interpretation of section 320, subdivision (b) as "odd." We disagree. The *Addison* court merely interpreted the language as it stood and refused to expand its application to transform it into a clear grant of a general right to inspect.

The DMV relies, however, on *People* v. *Shope, supra,* 128 Cal.App.3d 822-824, which took issue with *Addison*'s restrictive interpretation of section 320. *Shope* held that the last two sentences of the section applied to single businesses as well as those sharing the premises, declaring at page 823

that "[w]hile we agree that the language in the last paragraph is not a model of clarity, we are satisfied that this interpretation [of *Addison*] is incorrect and contrary to the purpose of the statute."

*Shope* involved review of the conviction of the owner of an auto salvage yard for receiving stolen property, and *Shope* interpreted section 320 while discussing the lawfulness of a search of Shope's *lot,* rather than his business records. *Shope* also based its approval of the lot search on the ground that auto dismantlers constituted a business which required intense, on-the-spot regulation to control the problem of stolen vehicles and the stripping of those vehicles to obtain auto parts for resale.

It may well be that *Shope* was correct in identifying auto dismantlers as a business requiring close regulation; in that circumstance, its interpretation of section 320 was not necessary to affirm the criminal conviction. *Shope* did not hold that section 320 subjected retail car dealerships to a warrantless search of all business records. *Shope* also remains questionable authority concerning legislative intent, since the subsequent 1985 amendment removed subdivision (c) from section 320 and set it forth elsewhere, in section 1670, by itself.

It is noteworthy that on two occasions since *Addison,* in 1978 and in 1981, bills were presented to the California Legislature—and defeated—which would have amended section 320 to give the DMV the power to inspect they insist on this appeal that they already have.[2]

Despite *Addison* and unsuccessful legislative efforts, section 410.00 of title 13, California Administrative Code, provided as follows: "410.00 Business Records. Pertinent records of a licensed dealer which must be open to inspection pursuant to Vehicle Code Section 320 are those records maintained in the regular course of business insofar as those records are directly concerned with the purchase, sale, rental or lease of a vehicle.

"(a) Unless otherwise specified by statute, all business records relating to vehicle transactions shall be retained by the dealership for a period of not less than three years.

"(b) When, for any reason, a dealership terminates business, all departmental report of sale books, along with all permits, licenses, special license

---

[2] Petitioner has requested that we take judicial notice of certain legislative materials submitted on its behalf.

The 1978 bill was Assembly Bill No. 2791. The 1981 bill was Assembly Bill No. 735. The Legislative Council's Digest explained, at the outset of section 735, that existing law did *not* give the DMV the power to conduct general inspection of the business records of occupational licensees. We take such notice, pursuant to Evidence Code section 452, subdivision (c).

plates and registration indicia therefor, and all vehicle salesman's licenses in possession of the dealership shall be surrendered to the department."[3]

It is not entirely clear what "pertinent records" includes. Petitioner suggests that the DMV could decide, on an ad hoc basis, what it considered pertinent. Thus, unless the DMV's interpretation of section 320 is correct, the regulation is overly broad and defectively vague. Petitioner, and the amicus car dealer associations, point out that a dealer's records may include a wide variety of documents which do not concern the DMV, such as the financial details of the dealer's business, payroll records, credit applications of customers and credit reports on the customers. Given the potential for invasion of privacy, it is essential to define "pertinent" so as to curtail the possibility of unwarranted fishing expeditions in which DMV employees rummage through a dealership's records.

Significantly, in dealing with petitioner the DMV refused to specify what information it wanted, suggesting that the DMV either wished to test the strength of section 320 or did not know what it was looking for. In a properly conducted investigation, Government Code section 11181, subdivision (e) confers subpoena power upon such state agencies as the DMV. No attempt was made to use it here, however, suggesting again that for whatever reason, the DMV did not wish to specify what "pertinent records" it sought.

We are satisfied that neither section 320 nor any other Vehicle Code provision gave the DMV the right to demand such unspecified access to petitioner's records.

(5) We can only reiterate the observation of the *Addison* court with respect to the DMV's unilateral efforts to expand their warrantless inspection power: "Even if the DMV has consistently made such an interpretation [that they have the right to generally inspect without legal process], the California Supreme Court has long held that: 'Although the construction of a statute by the officials charged with its administration is entitled to weight, final responsibility for interpretation of the law rests with the courts, and "an erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change." [Citations.]' (*Coan* v. *State of California* (1974) 11 Cal.3d 286, 294, fn. 9 [113 Cal.Rptr. 187, 520 P.2d 1003].)" (*Addison* v. *Department of Motor Vehicles, supra,* 69 Cal.App.3d 486, 497.)

---

[3]Effective 30 days after an amendment filed September 13, 1985, subdivision (b) of section 410.00 was deleted. (Cal. Admin. Code, tit. 13, § 410.00.)

## II

Amicus on this appeal have argued that the DMV has violated the right guaranteed to petitioner by the Fourth Amendment, United States Constitution, to be free from unreasonable searches and seizures. In view of our conclusion that the DMV was acting without statutory authority, it is unnecessary for us to address in depth the constitutional issues raised by amicus, except in one respect.

Respondent DMV characterizes retail car dealerships as closely regulated businesses where necessity compels governmental intrusion upon their business records without the prior restraint imposed by an appropriately fashioned warrant or subpoena duces tecum. We decline to adopt such a characterization.

In *Camara* v. *Municipal Court* (1967) 387 U.S. 523 [18 L.Ed.2d 930, 87 S.Ct. 1727], the United States Supreme Court held that warrantless searches by governmental inspectors for the purpose of enforcing administrative regulations were as subject to the Fourth Amendment protection as those by law enforcement personnel conducting a criminal investigation. The principle has been applied to searches of private residences (*Camara*) and to commercial establishments as well (*See* v. *City of Seattle* (1967) 387 U.S. 541 [18 L.Ed.2d 943, 87 S.Ct. 1737].) It was reaffirmed by the high court in *Marshall* v. *Barlow's, Inc.* (1978) 436 U.S. 307, 312 [56 L.Ed.2d 305, 311, 98 S.Ct. 1816], noting that the basic purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by government officials. [Citation.]"

However, the United States Supreme Court has also recognized that there are exceptions to the general principle of requiring a warrant for administrative search. The exceptions are closely regulated industries which, by their very nature, require unannounced visits from government agents. Such cases are *Colonnade Corp.* v. *United States* (1970) 397 U.S. 72 [25 L.Ed.2d 60, 90 S.Ct. 774] (liquor licensees); *United States* v. *Biswell* (1972) 406 U.S. 311 [32 L.Ed.2d 87, 92 S.Ct. 1593] (licensed firearm dealers); and *Donovan* v. *Dewey* (1981) 452 U.S. 594 [69 L.Ed.2d 262, 101 S.Ct. 2534] (underground and surface mines). In California, the exception has been applied in *People* v. *Firstenberg* (1979) 92 Cal.App.3d 570 [155 Cal.Rptr. 80], certiorari denied *Firstenberg* v. *California* (1980) 444 U.S. 1012 [62 L.Ed.2d 641, 100 S.Ct. 660] (nursing homes); *Betchart* v. *Department of Fish and Game* (1984) 158 Cal.App.3d 1104 [205 Cal.Rptr. 135] (preservation of fish and game); *People* v. *Harbor Hut Restaurant* (1983)

147 Cal.App.3d 1151 [196 Cal.Rptr. 7] (wholesale fish dealers); and *Kim* v. *Dolch* (1985) 173 Cal.App.3d 736 [219 Cal.Rptr. 248] (massage parlors).

Closely regulated businesses ordinarily share a common circumstance: they engage in transactions or sales of products which directly affect the public health and safety. While it is true that the automotive business requires substantial attention from law enforcement personnel, we decline to classify the numerous legitimate retail car dealerships as businesses in need of the close regulation which warrantless search implies. Respondent DMV's argument must fail.

### III

Petitioner, the administrative law judge determined, had violated section 320 and California Administrative Code, title 13, section 410.00 by refusing DMV investigators free access to its business records. Since petitioner had complied with section 11714, subdivision (c), by giving to the investigators the report of sale books furnished to the dealership by the DMV, petitioner was found not to have violated that section.

The penalty imposed upon petitioner, that of license revocation, was specified by section 11705, which provides, in pertinent part, that "(a) The department, after notice and hearing, may suspend or revoke the license issued to a dealer, transporter, manufacturer, manufacturer branch, remanufacturer, remanufacturer branch, distributor, or distributor branch upon determining that the person to whom the license was issued is not lawfully entitled thereto, or has committed any of the following acts: . . . (10) Has violated one or more of the provisions of Article 1 (commencing with Section 11700) of Chapter 4 of Division 5 or *rules and regulations adopted pursuant thereto or adopted pursuant to Section 1651.* " (Italics added.)

As *Addison* explained, however, "Section 1651 gives the DMV authority to promulgate and enforce regulations . . . [but] does not purport to confer additional powers, but merely states the rule that an administrative agency has no authority to enact rules or regulations which alter or enlarge the terms of legislative enactments." (*Addison* v. *Department of Motor Vehicles, supra,* 69 Cal.App.3d 486, 494.)

Thus, since we have concluded that neither section 320 nor rule 410.00 confer upon the DMV the power to demand warrantless access to petitioner's business records, there was no evidentiary support in either the administrative record or in the record made in the trial court for the administrative disposition of petitioner's license. The trial court was in error in

determining that *People* v. *Shope, supra,* 128 Cal.App.3d 816, was dispositive of petitioner's application for a writ of mandate. Thus the penalty imposed cannot stand.

### DISPOSITION

The judgment is reversed. The trial court is directed to grant petitioner the relief sought. Parties to bear their own costs on appeal.

Spencer, P. J., and Devich, J., concurred.

Respondent's petition for review by the Supreme Court was denied March 16, 1988.