Filed 7/25/14  In re Robert O. CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ROBERT O., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | F068124 |
| Plaintiff and Respondent, | (Super. Ct. No. JL004638) |
| v. | |
| ROBERT O., | **OPINION** |
| Defendant and Appellant. | |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County.  David W. Moranda, Judge.

Caitlin U. Christian, under appointment by the Court of Appeal, for Defendant and Appellant.

---

[*]     Before Gomes, Acting P.J., Kane, J. and Detjen, J.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Following a contested jurisdiction hearing, appellant Robert O. was found to have possessed a concealable firearm for the benefit of or in association with a criminal street gang (Pen. Code,[1] §§ 186.22, subd. (b)(1)(A), 29610; count 1); possessed live ammunition (§ 29650; count 2); knowingly received, concealed, or withheld stolen property (§ 496, subd. (a); count 3); and actively participated in a criminal street gang (§ 186.22, subd. (a); count 4). He was adjudged a ward of the court pursuant to Welfare and Institutions Code section 602, and was placed on probation with various terms and conditions and ordered to pay a restitution fine. He now contends the evidence was insufficient to sustain the true finding on count 3. We reverse that finding, but otherwise affirm.

## FACTS

## I

### PROSECUTION EVIDENCE

On July 6, 2013, members of the Gang Violence Suppression Unit served a search warrant at Roberto Garcia's home in Merced. As they approached, Officer Alvarez noticed three subjects — Mario Jimenez, David V., and Robert — standing in front of the residence. All three immediately ran toward the house. Officers ordered Jimenez and David to the ground and detained them. At the same time, Alvarez saw Robert in the open, detached garage. Robert was standing next to a weight bench, looking startled, with his hands up. He was wearing a red cloth belt. As a gang officer, Alvarez knew

---

[1] All statutory references are to the Penal Code unless otherwise stated.

2.

Norteños often wore red, and specifically that type of belt.  He noted Robert also had a Norteño-related tattoo.[2]

A loaded .40-caliber Glock handgun was found on the floor next to the weight bench, within a foot of where Robert had been standing.[3]  Robert denied tossing the firearm onto the ground.  When Alvarez asked if his DNA or fingerprints would be on the firearm, however, Robert kind of laughed, smiled, and looked away from Alvarez.  A black pistol shotgun was also found in the garage in a rifle case.  In addition, a gun fell out of David's waistband when he was searched.  Methamphetamine was found in the back room of the residence, and there were 20 to 30 marijuana plants growing in the backyard.

Alvarez transported Robert to the police station.  Robert stated he associated with the "Rebels Before Locs" (RBL), a Norteño gang in Merced.  When booked into juvenile hall, Robert told staff he associated with Norteños and needed to be housed with them.

Alvarez explained that the principal types of crimes committed by Norteños in general and RBL in particular in Merced revolve around violence — shootings, stabbings, assaults, firearms, possessions, drive-bys, and things of that nature.  He opined that Robert was a Norteño gang member.  This opinion was based on Robert's statements that he "hung out" with RBL, even though he said he was not a gang member or gang affiliated; the fact he was housed with active northerners; his tattoo; the fact he had previously been contacted with other gang members; his clothing; and the fact he was with two other gang members — Garcia and David — committing gang crimes.

---

**2**     In addition to describing the events in which he personally participated, Alvarez testified as a gang expert.  We summarize only those portions of his testimony that are pertinent to the issue raised on appeal.

**3**     This gun was stolen from David Williams's vehicle about two years earlier.  Williams did not recognize Robert and had no idea who took the weapon.

3.

In response to a hypothetical question that tracked the evidence in this case, Alvarez opined that a minor located a foot from the firearm found by the weight bench would be in possession of that firearm for the benefit of a criminal street gang, and would be committing the crime in association with other gang members. The crime would benefit the Norteños and also Garcia as a gang member, because older gang members often have younger gang members hold firearms since they know a younger gang member will not be punished as severely as an older gang member would be. The crime would also benefit the younger gang member by showing his loyalty and commitment to the gang. In addition, assuming the individuals present were all gang members, it was Alvarez's opinion all would have access to all of the firearms. It is common among gang members that when someone has a firearm, the other gang members know and have access to the firearm for offensive or defensive purposes.

## II

### DEFENSE EVIDENCE

Garcia knew Robert as a family friend. Robert went to Garcia's residence every week or two to mow the yard, which was why he was at the house when everything happened. Robert had been at the house for no more than 30 minutes when the officers arrived. During that time, he mowed the lawn. Garcia never saw him with a gun. When the officers arrived, Garcia had just seen Robert put the lawnmower back in the garage.[4]

David and Jimenez were also at the house. As far as Garcia knew, David was not a gang member, although Jimenez was a Norteño. About a month earlier, someone had shot at them in front of Garcia's cousin's house, which was across the street from Garcia's residence. Jimenez had been shot in the hands. After the shooting, Garcia saw Jimenez in possession of the gun later found by the weight bench. About two hours before the officers came to Garcia's house, Garcia's father called and said a family

---

**4** Photographs taken during the search showed the lawnmower in the yard.

member had just called and said to tell Garcia to be careful, because the people who did the earlier shooting were going to come and shoot him soon. When Jimenez heard this, he grew nervous, and went home and got the gun and came back. Garcia did not know David also had a gun until after the officers came. The shotgun found in the garage belonged to Garcia's father, who had brought it over just in case something happened.

Garcia admitted being a Norteño, but explained he did not associate with the gang at all anymore. He did not believe Robert was a gang member. Robert was only at Garcia's house to cut the lawn, not to associate with Jimenez and David. Robert was not present at the earlier shooting.

## DISCUSSION

The essential elements of the crime proscribed by subdivision (a) of section 496, as alleged in count 3 of the wardship petition, are: "(1) The property must be stolen property, (2) the defendant must receive, conceal, or withhold it or aid in receiving, concealing or withholding it from its owner, (3) and defendant must have knowledge that the property is stolen property. [Citations.]" (*People v. Schroeder* (1968) 264 Cal.App.2d 217, 225; accord, *People v. Martin* (1973) 9 Cal.3d 687, 695.) Robert says the evidence failed to establish he knew the item he was found to have possessed — the .40-caliber Glock handgun found by the weight bench — was stolen. The People concede reversal is required. We agree.

"Our review of [Robert's] substantial evidence claim is governed by the same standard applicable to adult criminal cases. [Citation.] 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' [Citation.] '"[O]ur role on appeal is a limited one." [Citation.] Under the substantial evidence rule, we must presume in support of the judgment the existence of every fact that the trier of fact could reasonably have deduced from the evidence. [Citation.] Thus, if the circumstances

5.

reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant reversal of the judgment. [Citation.]' [Citation.]" (*In re V.V.* (2011) 51 Cal.4th 1020, 1026.)

Guilty knowledge may be proven by circumstantial evidence, although "when challenged on appeal those circumstances must be shown to constitute substantial evidence." (*People v. Kunkin* (1973) 9 Cal.3d 245, 254.) Unexplained possession of stolen property, standing alone, will not support a conviction for receiving stolen property. (*People v. Jackson* (1970) 14 Cal.App.3d 57, 63.) Generally, however, "[p]ossession of *recently* stolen property is so incriminating that to warrant conviction there need only be, in addition to possession, slight corroboration in the form of statements or conduct of the defendant tending to show his guilt. [Citations.]" (*People v. McFarland* (1962) 58 Cal.2d 748, 754, italics added.) Thus, "'[p]ossession of stolen property, accompanied by an unsatisfactory explanation of the possession or by suspicious circumstances, will justify an inference that the property was received with knowledge it had been stolen. [Citations.]' [Citation.]" (*People v. Schroeder, supra,* 264 Cal.App.2d at p. 225; accord, *People v. McFarland*, *supra*, at pp. 754-755.)

"An inference of guilt, otherwise reasonable, may be weakened beyond the point of reasonableness if it appears that the period between theft and discovered possession was inordinately long under the circumstances." (*Williams v. Superior Court* (1969) 71 Cal.2d 1144, 1151, fn. 6.) In the present case, the gun was not recently stolen, "what[ever] time intervals may be embraced within the term 'recent.'" (*People v. Anderson* (1989) 210 Cal.App.3d 414, 421.) The gun's owner did not recognize Robert and had no idea who stole the weapon some two years before it turned up in Robert's possession. There was no evidence Robert had possessed it for any length of time or how he came to possess it, although it reasonably can be inferred from Alvarez's testimony that he was holding it for an older gang member. Significantly, neither Robert's conduct

(kind of laughing, smiling, and looking away from Alvarez when Alvarez asked questions *directed at possession*) nor the circumstances surrounding his possession of the gun suggest guilt of anything other than the unlawful possession of a firearm itself.[5] (Contrast, e.g., *People v. Martin, supra,* 9 Cal.3d at pp. 695-696 [knowledge business machine stolen established by machine's presence in the defendant's car, unusual circumstances surrounding machine's transfer, and presence of number of other similar machines of which the defendant was aware]; *In re Richard T.* (1978) 79 Cal.App.3d 382, 388-389 [knowledge sufficiently shown where minor found in possession of gun soon after it was stolen, minor gave different stories concerning how he obtained possession, and minor admitted he suspected gun possibly was stolen]; *People v. Taylor* (1969) 2 Cal.App.3d 979, 983-984 [knowledge gun was stolen reasonably inferable from the defendant's flight, discard of weapon upon seeing police officer, wearing of outer clothing that could easily be removed so the defendant could change his appearance, and the defendant's possession of other, separately stolen, property]; *People v. Lopez* (1954) 126 Cal.App.2d 274, 277-278 [although nine months elapsed between time adding machine was stolen and time it was found in the defendant's possession, evidence was sufficient to show guilty knowledge where there was testimony the defendant would buy or receive stolen property when he had opportunity, and the defendant gave conflicting and unsatisfactory accounts of his acquisition of adding machine].)

Viewed in the light most favorable to the prosecution, the evidence here establishes Robert knew his possession of the gun was unlawful, but produces nothing

---

[5]     In her argument, the prosecutor did not point to any evidence suggesting Robert knew the gun was stolen.  She merely told the court:  "The firearm, you heard testimony, it was also stolen."  In making its findings, the court stated:  "And I also find that Count Three is true.  He was in possession of stolen property, and I think because it is a firearm and he was in possession of it, and the knowledge that it was stolen, I believe that's been found also."

more than speculative inferences concerning his knowledge the gun was stolen. "'[S]peculation is not evidence, less still substantial evidence'" (*People v. Waidla* (2000) 22 Cal.4th 690, 735), and evidence that only raises a strong suspicion of guilt is not sufficient to support a conviction (*People v. Davis* (2013) 57 Cal.4th 353, 360; *People v. Redmond* (1969) 71 Cal.2d 745, 755). Accordingly, the juvenile court's true finding on count 3 cannot stand, and the double jeopardy clause of the Fifth Amendment to the United States Constitution bars readjudication of that allegation. (*In re Miguel L.* (1982) 32 Cal.3d 100, 110-111; see *In re James M.* (1973) 9 Cal.3d 517, 520.)

## **DISPOSITION**

The true finding as to count 3 (violation of Pen. Code, § 496, subd. (a)) is reversed for insufficient evidence. Further proceedings on that allegation are barred. In all other respects, the judgment is affirmed.

8.