Filed 10/27/21  P. v. Simmons CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F081469 |
| Plaintiff and Respondent, | (Super. Ct. No. 4006950) |
| v. | |
| CHRISTOPHER DEAN SIMMONS, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Stanislaus County.  Nancy A. Leo, Judge.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Peter H. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*      Before Detjen, Acting P. J., Meehan, J. and DeSantos, J.

Appellant Christopher Dean Simmons was convicted by jury of owning and operating a chop shop (Veh. Code, § 10801) and receiving a stolen vehicle, a 1964 Chevrolet Impala (Pen. Code,[1] § 496d, subd. (a)). On appeal, he claims there is insufficient evidence to support his conviction for receiving a stolen vehicle. We affirm.

## PROCEDURAL HSTORY

On April 22, 2019, the Stanislaus County District Attorney's Office filed an information charging Simmons with owning and operating a chop shop (Veh. Code, § 10801; count 1); receiving a stolen vehicle, a 1964 Chevrolet Impala (§ 496d, subd. (a); count 2); and receiving stolen property, a license plate (§ 496d, subd. (a); count 3). The information further alleged that Simmons had suffered one prior strike conviction within the meaning of the "Three Strikes" law (§§ 1192.7, subd. (c) & 667, subd. (d)), and that he had served three prior prison terms (§ 667.5, subd. (b)).

On September 3, 2019, Simmons's jury trial commenced.

On September 9, 2019, after the prosecutor had rested his case, defense counsel moved for a judgment of acquittal on counts 2 and 3 pursuant to section 1118.1. The trial court granted Simmons's motion as to count 3. Although the trial court acknowledged count 2 was "a close case," it decided the evidence presented was sufficient to proceed to the jury.

On September 10, 2019, Simmons was found guilty on counts 1 and 2. In a bifurcated proceeding, the trial court found true the prior strike allegation and all three prior prison term enhancement allegations.

On December 10, 2019, the trial court granted Simmons's motion to discharge his appointed counsel, and to appoint new counsel to represent him on a motion for new trial and sentencing.

---

**1** All further undefined statutory citations are to the Penal Code unless otherwise indicated.

2.

On June 9, 2020, Simmons filed a motion for new trial.

On July 16, 2020, following argument by the parties, the trial court denied Simmons's motion for new trial, and his request to strike his prior strike conviction pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. Simmons was sentenced to a term of six years in state prison on count 1, and a concurrent term of four years on count 2. The trial court struck all three prior prison term enhancements (§ 667.5, subd. (b)).

On July 22, 2020, Simmons filed a timely notice of appeal.

## STATEMENT OF FACTS

*Prosecution's Case*

In January 2018, Jarrett St. John rented a 2017 GMC Sierra pickup truck from U-Haul for his friend, Lexi Alundra. A few days later, St. John attempted to contact Alundra about the U-Haul pickup truck, but his phone calls and messages were not returned. The vehicle was worth approximately $32,000. U-Haul contacted St. John when the pickup truck was not returned and, on January 31, 2018, the truck was reported stolen.

On March 14, 2018, Alonso Valdovinos responded to an advertisement for a power steering component which was posted on the website OfferUp. Valdovinos contacted the seller, " 'Dizzy Star,' " to inquire about a truck frame that was visible in the advertisement. The seller, who introduced himself as " 'Mike,' " assured Valdovinos that he could provide a bill of sale for the truck frame. Valdovinos agreed to purchase the frame for $1,200.

Valdovinos subsequently identified Simmons as the seller. When Valdovinos met with Simmons to purchase the truck frame, Simmons identified himself as Chris. The address Simmons had given Valdovinos to meet at was an address for a liquor store. As Valdovinos waited at the liquor store with his truck and trailer, Simmons waived

3.

Valdovinos down from across the street and directed him to a home at 1021 Beverly Drive in Modesto.

As they were loading the frame into Valdovinos's trailer, Valdovinos asked Simmons for the bill of sale. A woman, Jere Russell, came from next door with a paper and photo identification. Using a driver's license belonging to a man named Leroy Spears, Russell prepared a bill of sale for the frame. Spears was not present for the transaction.

Valdovinos became suspicious and took photographs of the property, the driver's license, the bill of sale, and Simmons. Valdovinos completed his purchase and drove directly to the Salida California Highway Patrol (CHP) office to determine whether the pickup truck frame had been stolen. He met with CHP Auto Theft Investigator Timothy Fautt, who determined the frame had been stolen from the 2017 GMC Sierra pickup truck owned by U-Haul.

On the morning of April 5, 2018, CHP Officer Matthew McCain and officers from the Stanislaus County Auto Theft Unit searched the property at 1021 Beverly Drive. In a makeshift shed behind the rear of one of the houses on the property, officers found a laptop with the name " 'Dizzy' " on it, paperwork with Simmons's name on it, vehicle parts, and tools.

Simmons, who was on the property when the officers arrived, admitted that most of the tools belonged to him and that he had slept in a bedroom in the shed. He denied selling a pickup truck frame to Valdovinos or selling vehicle parts through OfferUp. When McCain showed Simmons the photograph Valdovinos took of him, Simmons denied it was him.

During the search, officers found a dismantled GMC pickup truck cab and a 1964 Chevrolet Impala on the property. Various truck parts were strewn about near the truck cab. All identifying numbers on the pickup truck cab had been removed, which customarily occurs when a vehicle has been stolen.

4.

McCain stated that the cab had been crudely dismantled. The cab and pickup truck parts were identified as having come from the stolen U-Haul pickup truck rented by St. John.

The 1964 Chevrolet Impala was near the dismantled truck cab, parked on the other side of the fence from Simmons's shed. There were tools and various vehicle parts on top of the vehicle, some of which were from the Impala. Like the pickup truck cab, the Impala was being dismantled in a hasty and haphazard manner. McCain opined that the property at 1021 Beverly Drive was being used as a chop shop.

Simmons told McCain he had no knowledge of the pickup truck parts. He claimed the Impala just showed up on the property while he was at work one day.

The Impala belonged to Arunesh Sewak. He did not testify at Simmons's trial. According to Arunesh's brother, Salmendra, Arunesh stored the Impala at a home owned by Salmendra.[2]

In April 2018, Arunesh was living at his brother Salmendra's home by himself. According to Salmendra, no one else had permission to be at the house.

Salmendra stated that the 1964 Chevrolet Impala had been in his family for approximately 20 years and the vehicle had sentimental value. Salmendra stated the Impala was not in running condition and it had no registration tags. The Impala had also sustained smoke damage from a house fire.

Salmendra testified that no one had permission to cut the vehicle up, dismantle it, or take the vehicle to 1021 Beverly Drive. Salmendra last saw the Impala in January or February 2018.

In May 2018, Salmendra purchased the Impala for $2,000 from a tow yard. Impounded vehicles are sold after a period of time, and Arunesh did not have the money

---

[2] We refer to Arunesh and Salmendra by their first names to avoid confusion because they share the same last name. No disrespect is intended.

to recover the Impala from impound.  When Salmendra bought the Impala, the chrome molding on the sides of vehicle was missing.

***Defense's Case***

In April 2018, Jere Russell was renting the rear house at 1021 Beverly Drive. There are several sheds on the property.  Simmons occasionally lived in one of the sheds.

Russell initially denied that the white truck cab was in her yard.  She testified that a man by the name of Charlie Groenewole and an unidentified woman had brought the white pickup truck over and parked it across the street.  Groenewole told her the truck had not been stolen.

Russell did not recall participating in the sale of a pickup truck frame to Valdovinos.  She acknowledged that she knew a man named Leroy Spears.  However, Russell claimed she knew nothing about the truck frame Simmons had sold.

Russell stated that Simmons left the 1964 Chevrolet Impala outside of the gate so she pushed it into her yard.  According to Russell, Simmons and Groenewole told her the Impala was not stolen.

Richard Paloma, a private investigator for the defense, testified that he interviewed Russell on two separate occasions.  In both interviews, Russell said the Impala had been brought to her yard by two people whom she did not know.  She said one of those individuals could have been "Chris Zachary."  Russell told Paloma she pushed the Impala from the street into the yard because it was a bad neighborhood and people were looking at it.

During both interviews, Russell claimed Simmons was not involved in bringing the Impala to her residence.  Russell also told Paloma that Groenewole and an unidentified woman brought the white pickup truck to her property.  Russell claimed Simmons had nothing to do with the pickup truck when it was brought over.

## The Motion for New Trial

On July 16, 2020, the trial court held a hearing on defense counsel's motion for new trial. The defense argued that with respect to count 2, the charge of receipt of stolen property, no one who had a possessory interest in the Impala had testified at trial. The owner's brother, Salmendra, had testified the Impala was parked in his garage one day and then it was gone the next.

The prosecutor observed that Salmendra had testified the vehicle had been in the family for approximately 20 years. Salmendra had given his brother the money to purchase the vehicle, and he paid to get the vehicle out of impound after it was recovered from the chop shop.

The vehicle was stored at a home that Salmendra owned. Arunesh was staying at the home and no one else was living there or had permission to be there. Salmendra stated he knew no one else had permission to use the vehicle, and no one else had permission to dismantle it or to cut it into pieces.

The trial court asked the parties whether the jury could infer the Impala had been stolen based upon the following facts: the vehicle was in the family for an extended period of time, it was inoperable, it suddenly went missing, and then it appeared at Simmons's business. Defense counsel argued that even if such an inference could be drawn, the jury's verdict was premised upon inadmissible statements made by Salmendra that somehow he knew the vehicle was stolen.

The trial court acknowledged Salmendra never should have testified that the vehicle was stolen. However, the trial court had admonished the jury to "disregard the fact [that Salmendra] said it was stolen. There's no evidence of that."

Following argument, the trial court concluded there was sufficient circumstantial evidence to let the jury decide whether the Impala had been stolen and denied Simmons's motion for new trial.

## DISCUSSION

### I.  Substantial Evidence Supports Simmons's Conviction for Receipt of Stolen Property

Simmons contends there is insufficient evidence to support his conviction for receipt of stolen property.  He asserts the prosecution failed to prove the 1964 Chevrolet Impala had been stolen and that Simmons knew the Impala had been stolen.  Although the issue is close, we conclude the circumstantial evidence adduced at trial is sufficient to support Simmons's conviction.

#### A.  Relevant Legal Principles

When considering a challenge to the sufficiency of the evidence to support a conviction, " ' "we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' " (*People v. Lee* (2011) 51 Cal.4th 620, 632.)  We presume in support of the judgment " ' "the existence of every fact the trier could reasonably deduce from the evidence." [Citation.]' " (*Ibid*.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

The substantial evidence standard is the same whether the evidence is direct or circumstantial.  (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.)  "Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence." (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.)

"[T]he elements of receiving stolen property are:  (1) that the particular property was stolen; (2) that the accused received, concealed or withheld it from the owner thereof; and (3) that the accused knew that the property was stolen." (*People v.*

8.

*Johnson* (1980) 104 Cal.App.3d 598, 605, called into doubt on other grounds by *People v. Escobar* (1992) 3 Cal.4th 740.)

### B. Analysis

The circumstantial evidence adduced at trial was sufficient to permit the jury to infer the Impala had been stolen and that Simmons had received the Impala with knowledge that it had been stolen. Although Arunesh, the owner of the Impala, was not present at trial to testify that the Impala had been taken without his permission, the jury could reasonably infer he did not abandon the vehicle or give it away. The prosecutor adduced evidence showing the Impala had sentimental value, it had been in the family for approximately 20 years, and although it was not in running condition, it was stored in a garage.

The evidence suggests Simmons came into possession of the Impala by illicit means based upon the fact that Simmons told McCain the vehicle just showed up on the Beverly Street property while he was at work one day. However, Russell testified Simmons had brought the Impala to the outside gate of the property.

Notwithstanding the fact that Simmons's claim was directly contradicted by Russell's testimony at trial, Simmons's explanation concerning how he came into possession of the Impala was not credible. It is unreasonable for an individual to assume they can lawfully possess a vehicle simply by taking it onto their property, even if that vehicle appears to have been abandoned.

The inference that the Impala was stolen is further supported by the location where the vehicle was ultimately discovered and the state in which it was found. The Impala was in the process of being hastily dismantled at a chop shop. McCain explained that a vehicle is customarily dismantled in such a manner by auto thieves, who want to avoid being caught in possession of a stolen vehicle. If the Impala had been lawfully received, there would have been no need to hastily dismantle it.

9.

Salmendra's testimony concerning the sentimental value of the Impala, Simmons's statement explaining how the Impala came into his possession, and the fact that the Impala had been found partially dismantled at a chop shop, also support the inference that Simmons knew the vehicle had been stolen. " '[P]ossession of stolen property, accompanied by no explanation or unsatisfactory explanation, or by suspicious circumstances, will justify an inference that the goods were received with knowledge that they had been stolen. *Corroboration need only be slight and may be furnished by conduct of the defendant tending to show his guilt*.' [Citations.]" (*In re Richard T.* (1978) 79 Cal.App.3d 382, 388, italics added; *People v. Grant* (2003) 113 Cal.App.4th 579, 596 ["A defendant's false statement concerning how he obtained property that was in fact stolen is sufficient to show the defendant knew the property was stolen."]; accord, *People v. Bugg* (1962) 204 Cal.App.2d 811, 817.)

Simmons suggests there are exculpatory inferences that can be drawn from the evidence. He contends the Impala could have been abandoned by the actual vehicle thief or by Arunesh, who may have voluntarily disposed of the Impala, which was not in running condition. In finding Simmons guilty of receipt of stolen property, however, the jury was convinced beyond a reasonable doubt that Simmons had not acquired the Impala by lawful means. " 'Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal.' [Citation.]" (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Simmons also makes much of the fact that Salmendra was not aware of Arunesh's whereabouts during the trial, but he does not explain how this undermines Salmendra's testimony or his credibility. At the time of Simmons's trial, Salmendra was in the process of obtaining a restraining order against Arunesh. Simmons suggests the jury could reasonably infer the two brothers were estranged. We do not see how Simmons's argument assists him.

10.

The jury heard evidence pertaining to the nature of Salmendra and Arunesh's relationship at the time of Simmons's trial, and in finding Simmons guilty, it determined Salmendra had testified credibly.  Simmons offers no basis which would permit us to second-guess the jury's credibility finding, or to infer that Salmendra's testimony was inherently improbable or impossible to believe.  We therefore conclude Simmons's assertions are without merit.

## DISPOSITION

The judgment of conviction is affirmed.